Wis.]    JANUARY TERM, 1897.     561

Chicago & Northwestern R. Co. vs. Milwaukee, R. & K. Electric R. Co.

Chicago & Northwestern Railway Company, Appellant, vs. The Milwaukee, Racine & Kenosha Electric Railway Company, Respondent.

*February 27 — April 7, 1897.*

*Eminent domain: Compensation for the occupation of street by railroad.*

The construction and operation, on a public street, of an electric railroad extending between several cities or towns, for the transportation of merchandise, personal baggage, mail, and express matter, as well as passengers, is not a mere exercise of the public easement previously acquired by the establishment of such street, but imposes an additional burden thereon, and is a taking of private property, for which the abutting owner is entitled to compensation.

Appeal from an order of the circuit court for Milwaukee county: D. H. Johnson, Circuit Judge. *Reversed.*

The plaintiff is a corporation organized under the laws of this state, and owns and operates by steam power a line of railway, consisting of two main tracks, from Milwaukee to Chicago. Said railway passes through the village of South Milwaukee and the cities of Racine and Kenosha, and is engaged in the carriage of passengers and freight. That within the village of South Milwaukee the plaintiff's said railroad tracks cross Milwaukee avenue, one of the main public streets therein. Milwaukee avenue runs in an east and west direction, and crosses the railroad tracks nearly at right angles. Immediately south of the avenue is the plaintiff's passenger station and depot grounds connected therewith, which station and grounds are necessarily used by the plaintiff in connection with its business and railroad, and the plaintiff is the owner of the whole thereof in fee simple. Such depot grounds abut upon the south side of the said avenue for a distance of 200 feet on the east side of its tracks. On the north side of said avenue, and immedi-

Chicago & Northwestern R. Co. vs. Milwaukee, R. & K. Electric R. Co.

ately east of the railroad tracks, the plaintiff is the owner in fee simple of a strip of land or right of way fifty feet in width, abutting upon the north side of said public street. The plaintiff is the owner in fee simple of the lands so within the public street to the center thereof on the south side for a distance of 200 feet and on the north side for a distance of fifty feet, subject, however, to the easement vested in the public therein, and the servitude necessarily incident to its occupation and use as and for a public highway.

The defendant, at the dates and times herein mentioned, was, and is now, a corporation organized and existing under and by virtue of the laws of this state, having its principal office and place of business at Racine. It appears by the articles of association of the defendant that it is authorized to build and operate a street railway with a track or tracks and cars to be run thereon for the purpose of carrying passengers, merchandise, personal baggage, mail, and express from a point within the village of South Milwaukee northerly into and through the village of Cudahy, and the towns of Lake and Oak Creek, in the county of Milwaukee, and southerly into and through the town of Oak Creek aforesaid, and into and through the towns of Caledonia and Mt. Pleasant, and the city and county of Racine, and into and through the towns of Somers and Pleasant Prairie, and the city and county of Kenosha.

The defendant, at the time of the commencement of this action, was and is engaged in the construction of a railroad in and through the village of South Milwaukee and along said Milwaukee avenue in said village, and had reached the property, lands, right of way, and tracks of the plaintiff, and had men at work upon the construction of its roadbed in said street, and the laying of ties and rails thereon, and had threatened, and still threatens, that it will construct its road and lay its ties and tracks in said street over and

across the above-described lands of the plaintiff and its rail-
road tracks on said lands, and string electric wires over the
tracks for. the purpose of furnishing electric power for the
running of its cars.   Until restrained it had actually en-
tered upon the said lands of the plaintiff abutting on said
avenue, and had excavated therein, and made grades thereon,
for the purpose of constructing its road, and had placed
heavy ties on said grade for the purpose of laying the rails
of its tracks thereon.   The defendant intends to use said
railroad, when constructed, for the transportation of freight,
mails, and express matter, as well as for passengers.   By its
articles of association the defendant has the right to use
locomotive engines and trains propelled by electric or any
other power.

The defendant admits that it is its object and purpose, if
it may so lawfully do, to build and operate a street-railway
system for the purpose of carrying passengers and personal
baggage and other merchandise, mail, and express, under
the authority of the proper municipal officers, and subject
to such rules and regulations and the payment of such
license fees as they may from time to time prescribe, over
and along the public streets and highways within the village
of South Milwaukee aforesaid, and over and along the high-
ways north and south of said village; that the village board
of South Milwaukee, by ordinance, granted authority and
permission to the defendant, its successors and assigns, to
lay and maintain single or double tracks for a street rail-
way with all necessary switches, curves, turnouts, Y's, poles,
wires, and other appliances and conveniences usually em-
ployed in the operation of a street-railway system using
electric or other power excepting steam, over and upon,
along and across those certain streets, bridges, culverts, and
public places within the corporate limits of the village de-
scribed, including Milwaukee avenue, and to operate thereon
a street-railway system with electric or other power except-

ing steam for the carrying of passengers, personal baggage, merchandise, mail, and express, for the term of fifty years.

The supervisors of the town of Oak Creek had given to the defendant like authority; but the plaintiff has not given the defendant its consent or permission to construct such railway upon or across its said lands and railroad, or upon said street in front of said lands, nor to enter upon said lands of the plaintiff in said street for the purpose of grading the same, or laying ties or constructing its railway thereon, or stretching electric wires over and across the same; nor has the defendant entered into any agreement with the plaintiff company as to how and upon what terms such crossing, if made at all, shall be made, or any agreement touching plaintiff's damages on account of such crossing by defendant's road; nor has the defendant taken any steps, by condemnation or otherwise, to acquire the right to cross the plaintiff's said lands and railroad in the manner and for the purpose in which it proposes to cross the same.

The defendant threatens and intends to, and the plaintiff believes that it will, enter upon the plaintiff's said land, and cross its said railroad with the defendant's railroad now being constructed, without the consent of the plaintiff, and without making any compensation to it, unless restrained by the order and injunction of the court. If the defendant shall construct and operate its railroad over and upon and along the plaintiff's lands and railroad, serious and irreparable damage and injury will necessarily result to the plaintiff in its use and enjoyment of said lands and railroad, and in the exercise of its rights and franchises connected therewith.

November 17, 1896, the plaintiff commenced this action to perpetually enjoin the defendant from constructing its said track over and across or upon the said land and the railroad tracks of the plaintiff, or any part thereof, and from in any manner working upon or interfering therewith, and

Chicago & Northwestern R. Co. vs. Milwaukee, R. & K. Electric R. Co.

from proceeding with the laying of the track of the defendant over and across the railway and lands of the plaintiff, or in any manner interfering with the same during the pendency of this action, or until the further order of the court. January 9, 1897, the plaintiff's motion for a preliminary injunction was denied, with $10 costs of motion. From that order, and the whole thereof, the plaintiff brings this appeal.

For the appellant there were briefs by *Fish & Cary*, and oral argument by *John T. Fish*. They contended, among other things, that the railway sought to be constructed by the defendant has all the characteristics of a commercial railway, and imposes an additional burden upon the street, for which the abutting owners are entitled to additional compensation. *Indianapolis, B. & W. R. Co. v. Hartley*, 67 Ill. 439; *Ford v. C. & N. W. R. Co.* 14 Wis. 609; *Pomeroy v. M. & C. R. Co.* 16 id. 640; *Pennsylvania R. R. v. Montgomery Co. P. R. Co.* 167 Pa. St. 62; *Bohlman v. G. B. & L. P. R. Co.* 30 Wis. 105; *Diedrichs v. N. W. U. R. Co.* 33 id. 219, 221; *Uren v. Walsh*, 57 id. 98, 101.

For the respondent there was a brief by *Kearney, Phipps & Thompson*, attorneys, with *Quarles, Spence & Quarles*, of counsel, and oral argument by *Park Phipps* and *J. V. Quarles*. They argued that, if the right of the defendant to carry freight be disallowed, that would not affect its rights in other respects. Thompson, Corp. § 229; *Becket v. Union B. & L. Asso.* 88 Pa. St. 211; *Albright v. Lafayette B. & S. Asso.* 102 id. 411; *Eastern Plank R. Co. v. Vaughn*, 14 N. Y. 551; *Oregon R. & N. Co. v. O. R. Co.* 130 U. S. 1, 25; *People ex rel. Peabody v. Chicago Gas Trust Co.* 130 Ill. 268; *S. C. 8 L. R. A. 497, 506.* A street railway, unlike a commercial railway, so uses a street as not to exclude or seriously obstruct the common travel. Booth, Street Railway Law, § 83; *Hobart v. Milwaukee City R. Co.* 27 Wis. 194; *Briggs v. Lewiston & A. Horse R. Co.* 79 Me. 633; *Newell v. M., L. & M. R. Co.* 35 Minn. 115; *Detroit City R. Co. v. Mills*, 85 Mich.

656; *East End St. R. Co. v. Doyle,* 9 L. R. A. 100; *Halsey
v. Rapid Transit St. R. Co.* 47 N. J. Eq. 380; *Chicago, B. &
Q. R. Co. v. West Chicago St. R. Co.* 156 Ill. 268; *State ex rel.
Roebling v. Trenton P. R. Co.* 33 L. R. A. 129; *Montgomery
v. S. A. & W. R. Co.* 104 Cal. 186; *S. C.* 25 L. R. A. 654;
*Nichols v. Ann Arbor & Y. St. R. Co.* 16 L. R. A. 371. The
convenience of abutting owners may, to a reasonable extent,
be encroached upon without impairing their constitutional
rights or entitling them to compensation. *Cushing v. Boston,*
122 Mass. 173; *Att'y Gen. v. Metropolitan R. Co.* 125 id. 517.
The right of a street railway to be considered a part of the
general public easement, and its right to cross the tracks of
steam railways, have been fully recognized by the courts.
*Chicago & C. T. R. Co. v. Whiting, H. & E. C. St. R. Co.*
139 Ind. 297; *S. C.* 26 L. R. A. 337; *Pittsburgh, C., C. &
St. L. R. Co. v. West Chicago St. R. Co.* 156 Ill. 385; *New
York, N. H. & H. R. Co. v. Bridgeport Traction Co.* 29 L.
R. A. 367; *Old Colony R. Co. v. Rockland & A. St. R. Co.*
161 Mass. 416.

CASSODAY, C. J.    Milwaukee avenue, at South Milwaukee,
runs east and west, and the plaintiff's railroad tracks cross
it nearly at right angles. Its depot grounds at that place
extend east from such tracks along the south side of the
avenue, and abutting thereon, for a distance of 200 feet.
On the north side of the avenue, and abutting thereon, and
immediately east of said tracks, the plaintiff owns a strip of
land or right of way fifty feet in width. The answer ex-
pressly admits " that the plaintiff is the owner of the lands "
so·described, " within said public street, and to the center
line thereof," on both sides, "subject to the easement vested
in the public." This admission is in accordance with the
well-settled rule of law in this state to the effect that the
owner of land abutting upon a public street or highway has
the legal title to the center of such street or highway, sub-

ject only to the public easement. *Milwaukee v. M. & B. R. Co.* 7 Wis. 85; *Mariner v. Schulte*, 13 Wis. 692. Upon this principle it has been held by this court that the abutting owner has such rights of property in the soil within the limits of a street or highway that he may remove portions thereof, and construct vaults or other areas under the sidewalk, with openings in the walk, and construct projecting bay windows, *provided* he does so in a manner not to interfere with or endanger public travel. *Papworth v. Milwaukee*, 64 Wis. 389; *Hay v. Weber*, 79 Wis. 590. The general rule is that, *subject to such public easement*, the abutting owner has all the rights and remedies of an absolute owner in fee. 3 Elliott, Railroads, § 1085.

Such being the facts and the law in this case, it is obvious that the adjudication of cases arising in certain states and cities where the title to the land within the limits of public streets and highways is vested in the state or the public can have no bearing upon the question here involved, since the title to the land of such abutting owner in such states and cities terminates at the outer lines of the street or highway; and hence such abutting owner in such states and cities can only have, in addition to such public easement, a right of ingress and egress to and from his premises, or, as it is sometimes called, "an easement of access" to and from his premises. *Id.* The question presented, therefore, is whether the construction of the defendant's track and operating its street railway, as proposed, across the plaintiff's tracks, and upon and over the plaintiff's lands so within Milwaukee avenue, would be merely an exercise of the public easement previously acquired by the construction of that avenue, or an additional servitude and burden, for which the plaintiff, as such abutting owner, is entitled to compensation. In *Ford v. C. & N. W. R. Co.* 14 Wis. 609, 616; *S. C.* 80 Am. Dec. 791, Dixon, C. J., speaking for the court, and following New York and Massachusetts cases, among other things, in

effect, said: "It is too well settled to allow it now to be drawn in dispute before this court that the proprietors of lots bounded by a public street within a recorded town plat or village take to the center of the street, and own the soil, subject to the public easement." The conclusion is, therefore, "That a railroad company cannot appropriate and occupy it with the track of its road without the consent of such proprietor, or without compensation made to him, and that neither the legislature nor municipal authorities have any power to dispense with such compensation, seems irresistible. . . . The reason is stated in few words by Chief Justice SHAW: 'The two uses are almost, if not wholly, inconsistent with each other; so that taking the highway for a railroad will nearly supersede the former use to which it had been legally appropriated.' The dedication to the public as a highway enhances the value of the lot, and renders. it more convenient and useful to the owner. The use by the railroad company diminishes its value, and renders it inconvenient and comparatively useless. It would be a most unjust and oppressive rule which would deny the owner compensation under such circumstances." Accordingly the court affirmed the judgment granting a perpetual injunction. To the same effect: *Hegar v. C. & N. W. R. Co.* 26 Wis. 624; *Pettibone v. Hamilton,* 40 Wis. 411; *Kneeland v. Van Valkenburgh,* 46 Wis. 434; *Burbach v. Schweinler,* 56 Wis. 391; *Norcross v. Griffiths,* 65 Wis. 607, 611. Since such abutting owners have the legal title to the lands in the street, subject only to the public easement, it follows that, whenever such street is abandoned or vacated, such easement becomes extinguished, and such abutting owners, respectively, thereby acquire the right to possession as reversioners. *Burbach v. Schweinler, supra; Racine v. Crotsenberg,* 61 Wis. 485. "It is well settled in this state that the appropriation of a public highway for the purposes of a railroad is the imposition of an additional burden upon the abutting

owners, and hence is the taking of private property for public use, within the meaning of sec. 13, art. I, Const." *Buchner v. C., M. & N. W. R. Co.* 60 Wis. 272.

Such are the settled rules of law applicable to ordinary steam railways constructed, maintained, and operated in public streets for the carriage of passengers and freight. The question recurs whether the proposed street railway comes within the principles of law thus stated, or whether it will be a mere exercise of the easement acquired by the public when Milwaukee avenue was first opened to public use. In *Hobart v. Milwaukee City R. Co.* 27 Wis. 194; *S. C.* 9 Am. Rep. 461, it was held that "The construction and operation of a horse railway in the public streets of a city, by authority from the city government, is not a new burden imposed upon the owners of the fee of the land, and they are not entitled to a compensation therefor, except where some private right of such an owner (as his free access to his own land or buildings) has been materially impaired thereby." The learned chief justice, who wrote the opinion of the court in that case, after showing that different courts and different judges of the same court have disagreed as to whether the establishment and running of a *horse* railroad in a public street was an imposition of an additional burden upon the land of the abutting owners, reaches the conclusion "that the laying down of the rails and running of the cars in the manner shown by this case is not the appropriation of the street to a new use, requiring compensation to be made therefor to the plaintiff, unless he has shown that he will suffer some private or peculiar injury by being deprived of that free access to his premises which otherwise he would continue to have and enjoy." In that case the vehicles were drawn by horses, the same as ordinary carriages,— the only difference being in the size and shape of the vehicles, and the fact that in the one case they were confined to the fixed

iron track at grade, while in the other they were not; and yet, even in that case the conclusion of the court mentioned was manifestly so reached with some hesitation. The defendant in that case was incorporated under a special charter, and the law in force at the time authorized the municipality to grant to such corporation "such use . . . of any streets within its limits for the purpose of laying single or double tracks and running cars thereon for the carriage of *passengers only*, to be propelled *by animals or such other power as shall be agreed on.*" Secs. 1, 3, 4, ch. 313, Laws of 1860; sec. 1862, R. S. The same act authorized such corporation to extend its railways to any points within any town *adjoining* such municipality, and to lay and operate its railway upon the highways therein so as not to obstruct public travel thereon, upon procuring the written consent of a majority of the supervisors of such town. R. S. sec. 1863. In 1880 the powers of such street-railway corporations were enlarged and extended so as to authorize the same to build and operate their railways "in any village *or town*, or to extend from any point *in one village or town to, into, or through any other village or town;* and for running of cars propelled by *animals*, for the carriage of either *passengers or freight;* . . . but not so as to obstruct the common public travel thereon." Ch. 221, Laws of 1880; sec. 1863, S. & B. Ann. Stats. In 1881 the powers of such street-railway corporations were further enlarged and extended so as to authorize the same to run "cars thereon for the carriage of *freight and passengers*, to be propelled by *animals* or such other power as shall be agreed on." Laws of 1881, ch. 219; S. & B. Ann. Stats. sec. 1862. In 1891 the act of 1880 (sec. 1863, S. & B. Ann. Stats.) was amended; and the powers of such corporations further enlarged and extended so that such railways should not be limited to "streets," and so that cars might be propelled thereon by "other power" as well as "by animals," "for

the carriage of either passengers or freight." Laws of 1891, ch. 387.

As indicated in the statement made, the part of the defendant's proposed railway in question is to be a part of its connecting line of railway from the city of Kenosha to the city of Milwaukee; and, as expressed in the defendant's charter, it intends to use said railway, when constructed, for the carriage and transportation of passengers, merchandise, personal baggage, mail, and express matter, in cars and trains propelled by locomotive engines and electricity and other power; but with no provision for condemning lands or acquiring the right of way, nor for joining and uniting with other railways in forming crossings, intersections, and connections, nor in adjusting differences in case of disagreement, as required by statute in the case of steam railways. S. & B. Ann. Stats. sec. 1828, subd. 6. Such a railway is not a street railway, within the ruling of the *Hobart Case*, nor as generally understood. Upon what principle of law can it be said that before the plaintiff can construct its railway across or upon a public street or highway at grade it must make compensation to, or acquire the consent of, the abutting landowner, and yet that the defendant can do the same thing without such compensation or consent? The mere difference in motive power would seem to be insufficient. Besides, there is certainly far more difference in the use of mere horse power, as in *Hobart v. Milwaukee City R. Co.*, *supra*, and electric power, as in the case of the defendant, than there is in the case of electricity and steam. A mere street railway for carrying "*passengers only*," as the statute prescribed under which the *Hobart Case* was decided, would greatly relieve the streets of a city or village from travel, and hence would, to that extent, facilitate travel on foot or by carriage. Such street railways, under the decision in that case, do not necessarily constitute an additional

servitude or burden for which the abutting owners are entitled to compensation. The same would, to some extent, be true as to the suburbs of cities and villages. But the principle has no application to the country towns between Kenosha and Milwaukee. The carriage of "passengers only" probably included such articles and effects as the passengers retained in their own personal custody. But the several amendments of the Revised Statutes, mentioned, purposely dropped out the word "only," and added the word "freight," and also added the words "other power," as well as horse power. In other words, the manifest purpose of the amendments was to authorize the construction and operation of commercial railways upon such streets and highways without consent of, or compensation to, abutting owners. The charter of the defendant company contemplates the construction and operation of such commercial railway between Milwaukee and Kenosha,— which, of course, on the same theory, might be extended to Chicago. That such commercial railway upon public streets and highways, engaged in the carriage and transportation of merchandise, personal baggage, mail, and express matter, as well as passengers, would tend to obstruct and interfere with the ordinary uses of a street or highway, would seem to be quite manifest. Such use of streets and highways by such commercial railways constitutes, in our judgment, an additional servitude or burden upon the lands of abutting owners for which they are entitled to compensation. This certainly is in harmony with the decisions of this court. While there is much contrariety of opinion on the subject, yet the better rule seems to be that a commercial railroad constitutes an additional servitude or burden for which abutting owners are entitled to compensation. 3 Elliott, Railroads, § 1087, and cases there cited; *Shepardson v. M. & B. R. Co.* 6 Wis. 605; *Sherman v. M., L. S. & W. R. Co.* 40 Wis. 645; *Sweet v. Rechel,* 159 U. S. 380; *Lahr*

·v. *Metropolitan Elevated R. Co.* 104 N. Y. 268; *Willamette Iron Works v. Oregon R. & N. Co.* 26 Oreg. 224; *S. C.* 29 L. R. A. 88; *State v. C., M. & St. P. R. Co.* 36 Minn. 402.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded with direction to grant the temporary injunction, and for further proceedings according to law.