LINS, Respondent, vs. SEEFELD and wife, Appellants.

*December 16, 1905—January 9, 1906.*

*Plat of land: Acknowledgment: Dedication of streets: Estoppel: Abandonment by nonuser: Conveyances: Title to street: Adverse possession: Eavesdrip.*

1. *It would seem* that the execution of a plat of lands under oath was equivalent to a formal acknowledgment thereof as prescribed by sec. 5, ch. 41, R. S. 1849, especially in view of the

statute (sec. 2216b, Stats. 1898) curing defects in acknowledgment after twenty years' record.

2. Where, after platting land, the owner sells lots and blocks with reference to the streets described on the plat, both he and his grantees are estopped to deny the legal existence of such streets, though there was no sufficient statutory dedication thereof owing to the plat not having been properly acknowledged.

3. The recording of a plat is a dedication to the public of the streets marked thereon, including their entire width as there indicated; and the mere nonuser of a portion of a street does not operate as a surrender or abandonment of the same.

4. Where the owner of a lot and, subject to the public easement, of the fee in one half of B. street adjoining the same conveyed the lot "aside from B. street vacated," the grantee took no title to any of the land in B. street, even though, in fact, that street had not been vacated; and a subsequent conveyance by said owner to another person of the half of B. street adjoining said lot passed the title thereto, subject to the public easement.

5. A strip of land which was at all times subject to drippings from the eaves of the barn of the person having the legal title is *held* not to have been in such exclusive possession of another person as would ripen into title by adverse possession, even subject to such drippings.

APPEAL from a judgment of the county court of Waukesha county: M. S. GRISWOLD, Judge. *Affirmed in part, reversed in part.*

This is an action of ejectment for two strips of land hereinafter described. Issue being joined and jury waived, the cause was tried by the court, and the findings of the court are to the effect that one William J. Kline became the owner of the eighty acres of land described in 1850; that Kline made and executed a plat of that part of said lands constituting Kline's addition to the village of Eagle Center, which plat was recorded in the register's office October 30, 1851. There was designated on that plat a street four rods wide called Broadway, running in a northerly and southerly direction, and also another street of the same width called Railroad street, running in an easterly and westerly direction, which

streets crossed each other at right angles.   There was also
designated on the plat lot 1, block E, bounded on the south
by Railroad street and on the west by Broadway street, and,
of course, abutting upon each of those streets.   On March 4,

1868, Kline and wife by warranty deed conveyed to Flint and
Matheson lot 1 in block E, or at least the south fifty-three feet
of said lot on which a barn was then situated, and that deed
recited therein that such conveyance was *"aside from Broad-
way street vacated."*   The same land by mesne conveyances
from Flint and Matheson through divers persons was con-
veyed and became vested in the defendant *Frank Seefeld,* and
all the deeds in the chain of title from Flint and Matheson
down to and including the deed to *Frank Seefeld* described
the land so conveyed as being *"aside from Broadway street
vacated."*

On June 7, 1869, Kline and wife, by warranty deed, con-
veyed to one William Le Fever certain real estate, including
therein the east half of so much of said Broadway street as
was north of the north line of Railroad street and south of the
north line of lot 1, block E, projected westward and upon,

which it abutted; and this strip of land, two rods wide and of the same length as said lot 1, is a part of the land claimed by the plaintiff in his complaint and was found to be his land by the court under and by virtue of a warranty deed from William Le Fever to one John A. Lins, executed October 31, 1881, and by mesne conveyances said strip became vested in the plaintiff *Edmund Lins* July 10, 1897. Plaintiff also claims in his complaint to be the owner, and the court found that he was such owner, of a strip of land eighteen inches wide east and west, and fifty-three feet long north and south, bounded on the west by the east line of Broadway street as platted, and on the east by the hotel barn situated on said lot 1 mentioned, and on the south by the north line of Railroad street, both of which strips of land the plaintiff claims title to by adverse possession for more than twenty years prior to August 18, 1902, and ever since October 31, 1881. The court further found, as matters of fact, that August 18, 1902, the defendant *Frank Seefeld* unlawfully dispossessed the plaintiff from each and both of said strips of land, claiming to be the owner of both of them, to the plaintiff's damage.

As conclusions of law the court found, in effect, that the defendant *Frank Seefeld* was estopped from claiming title to the strip two rods wide mentioned by reason of the recitals in the deeds under which he claims title as mentioned, and that the plaintiff is the owner of both strips of land described, subject, however, to the drippings from the eaves of the defendants' said barn situated on lot 1 in block E, and was entitled to judgment accordingly, with his costs and disbursements in the action, and ordered judgment accordingly. From the judgment so entered and the whole thereof the defendants appeal.

For the appellants there was a brief by *Tullar & Lockney,* and oral argument by *D. S. Tullar.*

For the respondent there was a brief by *Ryan, Merton & Newbury,* and oral argument by *E. Merton.*

Cassoday, C. J.    1. Two questions are presented for consideration.    One is as to the ownership of the strip of land two rods wide mentioned in the foregoing statement.    It is conceded that prior to October 31, 1851, all the lands in question and other lands were owned by one William J. Kline,. who under oath made and executed a plat of the same which was duly recorded on the day and year last mentioned.    Such execution under oath would seem to be equivalent to a formal acknowledgment as prescribed by sec. 5, ch. 41, R. S. 1849,. especially in view of the curative statute after twenty years' record.    Sec. 2216*b*, Stats. 1898; *Bates v. Beloit,* 103 Wis. 90, 95, 78 N. W. 1102.    Besides, each party claims title, through mesne conveyances, under and by virtue of a deed from Kline and wife, describing the lands conveyed as designated on such plat.    It seems to be well settled that:

"Where, after platting land, the owner sells lots and blocks with reference to the streets therein described, both he and his grantees are estopped to deny the legal existence of such streets, although there is not a sufficient statutory dedication, owing to the plat not being properly acknowledged.    The right of abutting owners to have a public street remain open is not merely that they may use the same, but that all persons may use it as a public highway, free from all claim or interference of the original proprietor, or those claiming under him, inconsistent with such use."    *Rusk v. Berlin,* 173 Ill. 634, 50 N. E. 1071; *Smith v. Beloit,* 122 Wis. 396, 409–411, 100 N. W. 877, and cases there cited.

As contended by counsel for the defendants, the recording of the plat was a dedication to the public of the streets marked thereon, including their entire width as there indicated; and the mere nonuser of a portion of the street did not operate as a surrender or abandonment of the same for the purposes of a public street.    *Madison v. Mayers,* 97 Wis. 399, 73 N. W. 43.    It follows that, upon the recording of that plat, Broadway became a public street in the village of Eagle Center.    It has long been "settled in this state that the owner of

a lot bounded by a public street within a recorded town or village plat takes to the center of the street, subject to the public easement." *Hegar v. C. & N. W. R. Co.* 26 Wis. 624; *Norcross v. Griffiths,* 65 Wis. 599, 607, 27 N. W. 606; *C. & N. W. R. Co. v. M., R. & K. E. R. Co.* 95 Wis. 561, 568, 70 N. W. 678. So Kline, as the owner of said lot 1, continued to be the owner to the center of Broadway street, subject to the public easement. As such owner he was at liberty to convey the whole or any part thereof. The conveyance by himself and wife to Flint and Matheson in 1868 did not purport to convey the whole of said lot 1 nor any part of Broadway street, but recited therein that such conveyance was *"aside from Broadway street vacated."* While this language may be subject to criticism, yet it was manifestly intended to except from the premises therein granted so much of said lot 1 as constituted the east half of Broadway street. In other words, it limited the grant to that portion of the lot east of the east line of the street. The same is true of the several mesne conveyances from Flint and Matheson through divers persons down to and including the defendant *Frank Seefeld.* It follows that *Seefeld* got no title by virtue of such conveyances to any portion of the land constituting the east half of Broadway street. The mere fact that the portion of Broadway street in question was never "vacated," as mentioned in the clause of the deed quoted, is of no significance, since a false statement in a description of land, otherwise complete and accurate, is never allowed to frustrate the grant. *Thompson v. Jones,* 4 Wis. 106, 110; *Brown v. La Crosse G. L. & C. Co.* 16 Wis. 555. It is equally clear that the title to so much of said lot 1 as constituted the east half of Broadway street passed from Kline and wife to Le Fever, subject to such public easement, June 7, 1869, and from him by mesne conveyances to the plaintiff in this action, as found by the trial court.

2. The other question presented is as to the ownership of

the strip of land eighteen inches wide lying between the east line of Broadway street and the barn of the defendants mentioned in the foregoing statement. The trial court held that the plaintiff had title to that strip of land by reason of adverse possession by himself and his grantors for more than twenty years prior to August 18, 1902. But the court also found as a matter of fact and of law that such ownership was subject to the drippings from the eaves of the defendants' barn situated on said lot 1, block E. That barn and a prior barn situated on the same ground had been there during all those years, and the eighteen-inch strip mentioned had during all that time been subject to drippings from the eaves of such barns. Such use of that strip by the defendant and his grantors was, in effect, a continued claim of title and possession by them, and, under the evidence in this case, prevented any exclusive possession of the same in the plaintiff or any one under whom he claims title thereto. We find no sufficient evidence in the record to justify such finding of the trial court in respect to such strip of eighteen inches. This branch of the case was brought into the action by an amendment of the complaint upon the trial against the objection of the defendants.

*By the Court.*—That portion of the judgment of the county court of Waukesha county giving to the plaintiff the strip eighteen inches wide is reversed, and the balance of the judgment is affirmed, with costs taxable in favor of the defendants.