JOHNSTON and another, Appellants, vs. LONSTORF and others, imp., Respondents.

*February 5—April 17, 1906.*

*Municipal corporations: Vacation of streets and alleys: Title of abutting owners: Cul-de-sac: Compensation to protesting owners: Statutes: Milwaukee city charter.*

1   The owner of a lot bounded by a public street or alley within a recorded city or village plat takes title to the center of such street or alley, subject to the public easement.

2.  The mere fact that a portion of an alley is a *cul-de-sac* does not preclude it from being a public alley.

3.  Where a public street or alley has been legally established it can be vacated only by compliance with statutory requirements; and where a city charter gives the council power to vacate, but does not prescribe how that power shall be exercised, the provisions of secs. 904, 927, Stats. 1898, are to be followed.

4.  The Milwaukee city charter (authorizing the common council to vacate streets and alleys upon petition of a specified number of freeholders and residents of the ward and upon the necessity therefor being established by the verdict of a jury, but not expressly requiring the consent of, or compensation to, abutting owners) does not give the common council power to vacate a public alley without compensation to the protesting owners of lots abutting thereon.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This is an appeal from an order dissolving a temporary injunction restraining the defendants from vacating and closing up the portion of the public alley west of Twenty-third street upon which the lots of the respective plaintiffs abut. The portion of the alley in question is in a block bounded on the north by Grand avenue, on the east by Twenty-third street, on the south by Sycamore street, and on the west by Twenty-fourth street, and is twenty-five feet wide, and is located about half way between Grand avenue and Sycamore street, and extends from Twenty-third street west about eight rods to the

VCI. 128—2

east line of the lot of the plaintiff *Johnston* mentioned, which lot abuts against the west end of the alley and extends from Grand avenue south 210 feet, and is eighty feet wide and fronts on Grand avenue. The lot of the plaintiff *Cowdery* mentioned joins the *Johnston* lot described on the east, and fronts on Grand avenue, and is sixty feet wide, and extends from Grand avenue south 175 feet to the alley upon which it abuts. The defendant *Mrs. Lonstorf* owns the lot fronting on Grand avenue and between the *Cowdery* lot described and Twenty-third street, which is about seventy-two feet wide and extends from Grand avenue south 175 feet to the alley upon which it abuts. The defendants *Mrs. Lamp* and *F. H. Miller,* as trustees under the will of Peter Lamp, who died prior to 1893, own the several lots bounded by the alley on the north, abutting thereon, and extending from Twenty-third street west about 132 feet.

It appears and is undisputed that upon the plat of the lots mentioned, which was duly recorded in 1883, there is dedicated to public use an alley twenty-five feet in width, the west eight rods of which have been described, and which "said alley continued and continues through the remainder of said Grand Avenue Heights addition lying on the east side of Twenty-third street;" that the plaintiffs and each of them purchased their respective parcels of land relying upon the existence of said alley giving them an exit from the rear of their respective lots; that in 1896 the plaintiff *Johnston* built a dwelling house on his lot, fronting on Grand avenue, and at great expense built a barn upon the southern portion of his lot, opening and abutting on said alley, having an exit on said alley for the purpose of ingress and egress to and from said barn; that George Lonstorf, a son of *Mrs. Lonstorf,* residing in the ward in which said premises were situated, was elected an alderman of the ward in the spring of 1904, and that he had taken part in the proceedings resulting in the vacation of the alley; that December 27, 1904, the said George, as such

alderman, presented to the common council a petition praying for the vacation of the portion of the alley west of Twenty-third street; that said petition was signed by *Mrs. Lonstorf,* but was not signed by any other owner or occupant of land abutting upon said alley, but was signed by some thirty free-holders residing and owning real estate in said ward at points remote from the alley; that in January, 1905, a resolution was passed by the common council and approved by the mayor directing the city engineer to make and file an accurate survey and plat of the portion of the alley proposed to be vacated; that in February, 1905, the engineer filed such survey and plat as so directed, and the same was thereupon approved by the common council and the mayor, and notice of such pro-posed vacation was thereupon given as required; that pur-suant to such notice a jury was selected and in July, 1905, made their report that said alley was no longer of any public utility, and August 21, 1905, a resolution and order was duly passed by the common council and approved by the mayor that said portion of said alley was no longer of any public utility, and the report of said jury and the whole thereof was thereby confirmed; that August 31, 1905, a certified copy of the final order of the common council vacating such portion of the alley, containing a full and accurate description and map and plat of the same, was filed with the register of deeds as required by sec. 3187*a,.* Stats. 1898. Thereupon this action was commenced and a temporary injunction was granted re-straining the defendants from closing up or fencing in the portion of the alley lying west of Twenty-third street. Upon the complaint and verified answer of *Mrs. Lonstorf* and the trustees under the Lamp will the trial court issued an order to show cause September 25, 1905, why such injunctional or-der should not be dissolved, and November 1, 1905, the trial court vacated and set aside said injunctional order. From that order the plaintiffs appeal.

For the appellant *Johnston* there was a brief by *Quarles,*

*Spence & Quarles,* attorneys, and *J. V. Quarles, Jr.,* of counsel; for the appellant *Cowdery* there was a brief by *Miller, Noyes & Miller;* and the cause was argued orally by *George Lines.* To the point that the vacation of a street is a "taking" of property within the constitutional inhibition, and cannot be lawful without compensation made, counsel for appellant *Johnston* cited Elliott, Roads & Streets, § 877; 27 Am. & Eng. Ency. of Law (2d ed.) 115; *Bigelow v. Ballerino,* 111 Cal. 559, 44 Pac. 307; *Chicago v. Burcky,* 158 Ill. 103; *Meyer v. Teutopolis,* 131 Ill. 552, 23 N. E. 651; *McQuigg v. Cullins,* 56 Ohio St. 649; *Pearsall v. Eaton Co.* 74 Mich. 558; *Chicago v. Baker,* 86 Fed. 753; *S. C.* 98 Fed. 830; *Egerer v. N. Y. C. & H. R. R. Co.* 130 N. Y. 108; *Kane v. N. Y. El. R. Co.* 125 N. Y. 164; *Abendroth v. Manhattan R. Co.* 122 N. Y. 1; *Bannon v. Rohmeiser,* 90 Ky. 48; *Gargan v. L., N. A. & C. R. Co.* 89 Ky. 212; *Rensselaer v. Leopold,* 106 Ind. 29; *Indianapolis v. Croas,* 7 Ind. 9; *Cullen v. N. Y., N. H. & H. R. Co.* 66 Conn. 211, 226; *Lindsay v. Omaha,* 30 Neb. 512; *Van Witsen v. Gutman,* 79 Md. 405; *Webster v. Lowell,* 142 Mass. 324; *Heinrich v. St. Louis,* 125 Mo. 424.

Counsel for appellant *Cowdery* argued, among other things, that the right to pass over a street or alley to and from his land is a right of property in an abutting owner and is special in its nature and differs from the public easement. *Lennig v. Ocean City Asso.* 41 N. J. Eq. 606; *In re Pearl St.* 111 Pa. St. 565; *First Presby. Church v. Keller,* 39 Mo. App. 441; *Dooly Block v. Salt Lake R. T. Co.* 9 Utah, 31, 24 L. R. A. 610; *Ashby v. Hall,* 119 U. S. 526; *Marsh v. Fairbury,* 163 Ill. 401, 45 N. E. 236; *Kimball v. Kenosha,* 4 Wis. 321; *Pettibone v. Hamilton,* 40 Wis. 402; *Donohoo v. Murray,* 62 Wis. 100, 103; *Ford v. Schliessman,* 107 Wis. 479; *Mahler v. Brumder,* 92 Wis. 477. This property right of an abutting owner to the use of streets or alleys is a right for which compensation must first be made if an attempt be made to de-

prive the owner of it by vacation or other adverse proceedings.
*Lathrop v. Racine,* 119 Wis. 461; *Pearsall v. Eaton Co.* 74
Mich. 558, 42 N. W. 77; *Heinrich v. St. Louis,* 125 Mo. 424,
46 Am. St. Rep. 490; *Bigelow v. Ballerino,* 111 Cal. 559, 44
Pac. 307; *Eachus v. Los Angeles C. E. R. Co.* 103 Cal. 614,
42 Am. St. Rep. 149; *Adams v. C., B. & N. R. Co.* 39 Minn.
286, 39 N. W. 629; *Denver v. Bayer,* 7 Colo. 113, 2 Pac. 6;
*Rensselaer v. Leopold,* 106 Ind. 29, 5 N. E. 761; *Cadle v.
Muscatine W. R. Co.* 44 Iowa, 11; *Transylvania Univ. v.
Lexington,* 3 B. Mon. 25; *Lamm v. C., St. P., M. & O. R.
Co.* 45 Minn. 71, 47 N. W. 455; *In re Eleventh Avenue,*
81 N. Y. 436; *Moose v. Carson,* 104 N. C. 431, 10 S. E.
689, 17 Am. St. Rep. 681; *Schaible v. L. S. & M. S. R. Co.*
10 Ohio Cir. Ct. 334, 3 Ohio Dec. 233; *Anderson v. Turbe-
ville,* 6 Cold. 150; *Dooly Block v. Salt Lake R. T. Co.* 9
Utah, 31, 33 Pac. 229; *Onset St. R. Co. v. County Comm'rs,*
154 Mass. 395, 28 N. E. 286.

For the respondents there was a brief by *Fiebing & Killilea,*
and oral argument by *H. J. Killilea.* To the point that com-
pensation need not be made, they cited *Paul v. Carver,* 24 Pa.
St. 207, 64 Am. Dec. 649; *McGee's Appeal,* 114 Pa. St. 470,
8 Atl. 237, 240; *State v. Elizabeth,* 54 N. J. Law, 462, 24
Atl. 495; *Brooklyn Park Comm'rs v. Armstrong,* 45 N. Y.
234; *Kings Co. F. Ins. Co. v. Stevens,* 101 N. Y. 411; *Smith
v. Boston,* 7 Cush. 254; *Coster v. Albany,* 43 N. Y. 399;
*Fearing v. Irwin,* 55 N. Y. 486; *Heller v. A., T. & S. F. R.
Co.* 28 Kan. 630; *East St. Louis v. O'Flynn,* 119 Ill. 200,
10 N. E. 395; *Kimball v. Homan,* 74 Mich. 699, 42 N. W.
167; *Bauman v. Campau,* 58 Mich. 444, 25 N. W. 391; *Glas-
gow v. St. Louis,* 107 Mo. 198, 17 S. W. 743; *Brady v.
Shinkle,* 40 Iowa, 576; *Barr v. Oskaloosa,* 45 Iowa, 275;
*State v. Dexter,* 10 R. I. 341; *Stout v. Noblesville & E. G.
R. Co.* 83 Ind. 466; *Cummins v. Seymour,* 79 Ind. 491;
*Polack v. Trustees,* 48 Cal. 490; *Chicago v. Union Bldg.
Asso.* 102 Ill. 379; *Ingram v. C., D. & M. R. Co.* 38 Iowa,

669; *Concord's Petition,* 50 N. H. 530; *Lutterloh v. Cedar Keys,* 15 Fla. 305. "The only taking in a constitutional sense is a physical appropriation of the thing itself." *Kuhl v. C. & N. W. R. Co.* 101 Wis. 42, 46.

CASSODAY, C. J. It is conceded that the recording of the plat of Grand Avenue Heights addition in 1883 dedicated to the public use the streets and alleys marked thereon as such. *Pettibone v. Hamilton,* 40 Wis. 402; *Tilly v. Mitchell & L. Co.* 121 Wis. 1, 6, 98 N. W. 969. The plaintiffs respectively purchased the lots mentioned by the description of the same as given on said plat. It has long been settled in this state that the owner of a lot bounded by a public street within a recorded village or city plat takes title to the center of the street, subject to the public easement. *Kimball v. Kenosha,* 4 Wis. 321; *Milwaukee v. Milwaukee & B. R. Co.* 7 Wis. 85; *Hegar v. C. & N. W. R. Co.* 26 Wis. 624; *Norcross v. Griffiths,* 65 Wis. 607, 27 N. W. 599, 606; *Chicago & N. W. R. Co. v. Milwaukee, R. & K. E. R. Co.* 95 Wis. 561, 568, 70 N. W. 678; *Smith v. Beloit,* 122 Wis. 396, 410, 100 N. W. 877; *Lins v. Seefeld,* 126 Wis. 610, 614, 105 N. W. 917, 919. The same is true as to the owner of a lot bounded by a public alley. Elliott, Roads & Streets (2d ed.) §§ 23, 24, 25. It is there said, among other things:

"If the alley is a public one it is a highway, and, in general, is governed by the rules applicable to streets. . . . Whatever may be the dimensions of a way, if it be open to the free use of the public it is a highway; nor is its character determined by the number of persons who actually use it for passage. The right of the public to use the way, and not the size of the way or the number of persons who choose to exercise that right, determines its character. An alley of small dimensions, actually used by only a limited number of persons, but which the public have a general right to use, therefore, may be regarded as a public way. . . . Where an alley is ordered to be opened by the proper municipal authority it is deemed to be one of the public ways of the mu-

nicipality. The right of eminent domain may be exercised in opening alleys in substantially the same manner as in opening streets. . . . The rights and duties of a municipal corporation respecting alleys are substantially the same as those respecting streets."

The lot of the plaintiff *Cowdery* described is bounded on the south by the portion of the alley in question, and twenty-five feet of the lot of the plaintiff *Johnston* described is bounded on the east by the west end of the portion of the alley in question. The mere fact that that portion of the alley was and is a *cul-de-sac* did not preclude it from being a public alley. *Schatz v. Pfeil*, 56 Wis. 429, 435, 436, 14 N. W. 628; *Mahler v. Brumder*, 92 Wis. 477, 483, 66 N. W. 502. The right of abutting owners to have a public street or alley remain open is not merely that they may use the same, but that all persons may use it as a public street or alley, free from all claim or interference of the original proprietor, or those claiming under him, inconsistent with such use. *Lins v. Seefeld*, 126 Wis. 610, 105 N. W. 917, 919; *Tilly v. Mitchell & L. Co.* 121 Wis. 1, 6, 98 N. W. 969; *Smith v. Beloit*, 122 Wis. 396, 409, 411, 100 N. W. 877, and cases there cited.

The important question presented is whether, by virtue of the proceedings had, the common council and mayor had authority to vacate and close up the portion of the alley in question against the protest of the plaintiffs as such abutting owners, and without compensation. It seems to be pretty firmly settled that, where a public street or alley has been legally established, it can only be vacated, if at all, in the manner prescribed by statute. Elliott, Roads & Streets (2d ed.) § 25; 1 Lewis, Em. Dom. (2d ed.) § 134a; *Cromwell v. Conn. B. S. Q. Co.* 50 Conn. 470; *Miller v. Corinna*, 42 Minn. 391, 44 N. W. 127; *St. Louis, A. & T. H. R. Co. v. Belleville*, 122 Ill. 376, 12 N. E. 680; *Moffit v. Brainard*, 92 Iowa, 122, 60 N. W. 226; *Louisville v. Bannon*, 99 Ky. 74, 35 S. W. 120.

The statutes authorize "the common council of every city" (sec. 927, Stats. 1898), "upon petition in writing of the owners of lots or land on any street or alley," to "discontinue such street or alley or any part thereof; provided, that all the owners of lots or land on the portion of such street or alley proposed to be vacated and two thirds of the owners of lots or land on the remainder thereof shall sign such petition *and not otherwise.*" Sec. 904, Stats. 1898. It is true that the words "the common council of every city," found in sec. 927, Stats. 1898, and above quoted, applied only to cities organized "under general law;" but that section, as amended, now applies to "the common council of every city, *whether* acting under the general law or under a special charter." Sec. 1, ch. 169, Laws of 1903, and ch. 394, Laws of 1905. This being so, it evidently applies to the city of Milwaukee.

It is very obvious from the foregoing statement that the proceedings taken did not bring the case within the statute quoted, since the petition for vacating the portion of the alley in question was never signed by any of the five owners of land abutting upon that portion of the alley, except *Mrs. Lonstorf,* nor by two thirds or any of the owners of lots or lands abutting upon the portion of the alley east of Twenty-third street. Of course, where a portion of a street or alley is vacated and closed up at the request of all the owners of lands abutting thereon, the question as to compensation to such owners is thereby eliminated. This court has held that: "Where the common council of a city is authorized to vacate or discontinue streets, it must proceed, if the charter does not otherwise provide, in the manner prescribed by" secs. 904, 927, Stats. 1898. *James v. Darlington,* 71 Wis. 173, 36 N. W. 834. That case was distinguished in *Baines v. Janesville,* 100 Wis. 369, 375, 376, 75 N. W. 404, but expressly followed and sanctioned in *Ashland v. C. & N. W. R. Co.* 105 Wis. 398, 404, 80 N. W. 1101, where it was held: "Streets can be vacated only by compliance with statutory requirements, and,

when the charter does not prescribe how such power can be exercised, the provisions of" secs. 904, 927, Stats. 1898, "are to be followed." As already indicated, the amendment to sec. 927 makes it certain that the section as amended applies to the city of Milwaukee.

It is claimed on the part of the city and the other defendants that under the charter the common council had power to vacate streets and alleys without complying with the general provisions of the statute mentioned. In support of such contention counsel seem to rely upon *Brandt v. Milwaukee,* 69 Wis. 386, 388, 34 N. W. 246. That was "an application to the circuit court by the owners of all lands on both sides of an alley . . . to vacate the same." The trial court found that it "had no jurisdiction to vacate an alley in that city," and so dismissed the petition, and the judgment entered thereon was affirmed by this court on the ground "that the circuit court had no jurisdiction." True, it was said in the opinion of the court in that case that among the police powers granted to the common council by the charter was "the power to vacate streets and alleys by ordinance or resolution," subject to the "restrictions on the exercise of such power" therein contained; but the question whether a street or alley, or a portion thereof, could be vacated against the protest of any of the owners of the lands abutting thereon, and without compensation, was not there involved, much less decided or considered.

It is true that the charter, in general terms, gives to the common council power to "open, widen, straighten, and vacate streets and alleys, and establish and alter the grade thereof." Subd. 32, sec. 3, ch. IV, Milwaukee Charter. The charter also declares that "the common council shall have the power to lay out public squares, grounds, streets, and alleys, and to extend, enlarge and widen or vacate the same," upon the petition of "ten or more freeholders" and residents of the ward, as therein prescribed. Sec. 1, ch. VI, Milwaukee Charter. But there is nothing in that section requiring the consent of,

or compensation to, such abutting owners. The charter also declares that the common council shall have power to vacate, in whole or in part, such streets and alleys, provided the necessity therefor be first established by the verdict of a jury as provided therein for laying out public squares, grounds, and streets. Sec. 22, ch. VI, Milwaukee Charter. Other sections of the same chapter of the charter provide for giving notice to owners and occupants of lands abutting upon such street or alley and the selection of a jury to determine such necessity, and, when determined, the board of public works are required to ascertain and determine "the amount of damages to be paid to the owner or owners of the property proposed *to be taken* and also what lands or premises will be benefited *by such taking,* and make a report of their assessment of such damages and benefits to the council." Secs. 3, 4, 5, ch. VI, Milwaukee Charter. It will be observed that this relates to damages and benefits to the owner or owners of lands so taken, but does not in terms relate to the vacation of a street or alley.

But counsel for the defendants contend that under the language of the sections giving the common council power to vacate streets and alleys, "the same procedure is to be followed in vacating an alley as in laying out, extending, enlarging, or widening a street or alley until after the jury have made their report." The petition in the instant case seems to have been drawn upon that theory; but no proceedings were ever had to secure compensation to such abutting owners as refused to consent to the vacation of the portion of the alley west of Twenty-third street. The question recurs whether, under the charter or otherwise, the common council had power to vacate that portion of the alley in question without compensation to the protesting owners of lands abutting thereon. It is said by a learned writer on such matters that the owners of lands abutting upon a public highway, "who have lawfully and in good faith invested money or obtained property inter-

ests in the just expectation of the continued existence of the highway," are entitled to the benefit of the old maxim of the common law, "once a highway, always a highway." Elliott, Roads & Streets (2d ed.) § 871. Another leading text-writer on such matters declares that "a street cannot be closed so as to prevent access to abutting property, without the consent of the owners of such property, or compensation paid." 1 Lewis, Em. Dom. (2d ed.) §§ 134, 226a. There are plenty of adjudications to the same effect. *Indianapolis v. Croas,* 7 Ind. 9; *Rensselaer v. Leopold,* 106 Ind. 29, 15 N. E. 761; *Bigelow v. Ballerino,* 111 Cal. 559, 44 Pac. 307; *Heinrich v. St. Louis,* 125 Mo. 424, 28 S. W. 626; *Egerer v. N. Y. C. & H. R. R. Co.* 130 N. Y. 108, 29 N. E. 95; *Willamette Iron Works v. Oregon R. & N. Co.* 26 Oreg. 224, 37 Pac. 1016; *Johnston v. Old Colony R. Co.* 18 R. I. 642, 29 Atl. 594; *Pearsall v. Eaton Co.* 74 Mich. 558, 42 N. W. 77; *Horton v. Williams,* 99 Mich. 423, 58 N. W. 369. In this last case the facts were very much like the facts in the case at bar, and it was held in effect that "abutting lotowners have an interest in the land embraced in a public alley, and the city council has no right, under" a statute authorizing it to vacate alleys in the city, "to vacate a portion of said alley, without first compensating said abutting lotowners for any damages by them sustained, though their lots may not abut upon the portion so vacated." To the same effect: *Kimball v. Kenosha,* 4 Wis. 321, 330; *Lathrop v. Racine,* 119 Wis. 461, 473, 474, 97 N. W. 192; *Smith v. Beloit,* 122 Wis. 396, 409, 411, 416, 100 N. W. 877, and cases there cited. Some courts go to the extent of holding that, where the object of the proceeding is to close the alley and allow the land therein to revert to the abutting lotowners for a mere money consideration to be paid to the municipality, it does not constitute "a public use for which private property can be taken from one citizen and given to another." *Louisville v. Bannon,* 99 Ky. 74, 35 S. W. 120; *Moose v. Carson,* 104 N. C. 431, 10 S. E. 689. Most of the cases cited, how-

·ever, go upon the theory that the municipality, when authorized by the legislature, has such power and control over public streets and alleys that it may, in the manner prescribed, vacate the same or any part thereof, upon making compensation to the abutting owners.

It follows from what has been said that the trial court improperly dissolved the preliminary injunction.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.