La Crosse City Railway Co. vs. Higbee.

LA CROSSE CITY RAILWAY COMPANY, Appellant, vs. HIGBEE, Respondent.

*September 6 — September 25, 1900.*

*Electric street railways: Additional burden to fee: Streets: Rights of abutting owners: Trolley-wire pole: Right of city to authorize use of street for such poles.*

1. The rule as to whether a street railroad is an additional burden on the fee title to the street on which it is located, established in *Hobart v. Milwaukee City R. Co.* 27 Wis. 194, applies to street railroads operated by electric power communicated by means of a trolley wire supported over the track by cross wires attached to poles set in the streets near the outer edge of the sidewalk lines, so far as the construction and operation of such roads fall within the principle of such case.

2. The doctrine of *Krueger v. Wis. Tel. Co.* 106 Wis. 96, namely, that any new use of a street which to any extent requires a permanent occupancy thereof is an additional burden on the fee, applicable to telephone lines, does not apply to electric street railroads, because such railroads are but an improved method of using the street to effect its original design. The two doctrines divide on whether the use of the street is new, having regard to the original purpose thereof, or the use is only a new mode of devoting the street to public travel, its original purpose.

3. The principle of *Hobart v. Milwaukee City R. Co.* may be stated as follows: A railroad constructed on the grade of a street and operated so as not to materially interfere with the common use thereof for public travel by ordinary modes, or with private rights of abutting landowners, and for the purpose of transporting persons from place to place on such street at their reasonable convenience, is not an additional burden on the fee thereof.

4. A railroad satisfies the above essentials, regardless of the motive power used or how it is applied, if it be strictly a street railroad for the carriage of passengers on the street, taking them on and discharging them at reasonable points, and it be so constructed and operated as not to materially interfere with the ordinary modes of using the street for public travel or with private rights.

5. A supporting trolley-wire pole, set in a street in front of the sidewalk, does not violate the above rule if it be placed with reasonable regard for the convenience of the owner of the fee of the land on which it is located, and so as not to materially interfere with access to his lot outside the street line.

[Syllabus by MARSHALL, J.]

La Crosse City Railway Co. vs. Higbee.

APPEAL from an order of the circuit court for La Crosse county: R. G. SIEBEGKER, Judge.  *Reversed.*

Action to enjoin the defendant from cutting down an electric street railroad pole, which was erected in the usual way at the outer edge of the sidewalk on his property, on one of the streets of the city of La Crosse, Wisconsin.  Sufficient facts are properly stated in the complaint to constitute a good cause of action against the defendant, if electric street railroad poles may be legally placed in a city street, when so located as not to materially interfere with public travel, or access to and egress from abutting property, without the consent of the owner of such property, or his being compensated for a taking of his property for the public use. The defendant interposed a general demurrer to the complaint, which was sustained, and plaintiff appealed.

For the appellant there was a brief by *Losey, Woodward & Lees,* and oral argument by *G. M. Woodward.*  To the point that the pole in question imposed no additional burden on the fee title to the street, they cited *Williams v. City E. St. R. Co.* 41 Fed. Rep. 556; *Ogden City R. Co. v. Ogden City,* 7 Utah, 207; *Taggert v. Newport St. R. Co.* 16 R. I. 668; *Lockhart v. Craig St. R. Co.* 139 Pa. St. 419; *Koch v. North Ave. R. Co.* 75 Md. 222; *Halsey v. Rapid Transit St. R. Co.* 47 N. J. Eq. 380; *San Antonio R. T. St. R. Co. v. Limberger,* 88 Tex. 79; *Railway Co. v. Telegraph Asso.* 48 Ohio St. 390; *Detroit City R. Co. v. Mills,* 85 Mich. 634; *People ex rel. Kunze v. Fort Wayne & E. R. Co.* 92 Mich. 522; *Dean v. Ann Arbor St. R. Co.* 93 Mich. 330; *Howe v. West End St. R. Co.* 167 Mass. 46; *Kennelly v. Jersey City,* 57 N. J. L. 293; *Canastota K. Co. v. Newington T. Co.* 69 Conn. 146; *Merrick v. Intramontaine R. Co.* 118 N. C. 1081; *Philadelphia, W. & B. R. Co. v. Wilmington C. R. Co.* 38 Atl. Rep. 1067; *Birmingham T. Co. v. Birmingham R. & E. Co.* 119 Ala. 137; *Placke v. Union Depot R. Co.* 140 Mo. 634; *Chicago, B. & Q. R. Co. v. West Chicago St.*

*R. Co.* 156 Ill. 255; *Cumberland T. & T. Co. v. United Electric R. Co.* 93 Tenn. 492; *Snyder v. Fort Madison St. R. Co.* 105 Iowa, 284; *Chicago & C. T. R. Co. v. Whiting, H. & E. C. St. R. Co.* 139 Ind. 297; *Taylor v. P., K. & Y. St. R. Co.* 91 Me. 193; *Carter v. Northwestern T. E. Co.* 60 Minn. 539; *Palmer v. Larchmont E. Co.* 158 N. Y. 231; *Tompkins v. Hodgson,* 2 Hun, 146.

For the respondent there was a brief by *Higbee & Bunge,* and oral argument by *E. C. Higbee.*

MARSHALL, J.   The decision appealed from, as we are informed, was made on the theory that the case is controlled by the conclusion reached in *Krueger v. Wis. Tel. Co.* 106 Wis. 96, regarding the right to maintain telephone poles in public highways without the consent of abutting property owners, and the reasoning that led to such conclusion.   Counsel for respondent urge the same view in this court, so we are confronted at the outset with the question of whether the point now presented has been in effect decided and the law in regard to it established for this state against appellant's contention to the effect that an electric railway pole in a city street, properly placed, is not an additional burden upon the fee title to the land over which the street is laid.

We shall not discuss at any great length what was said in the *Krueger Case,* for the purpose of explaining and rendering the reasoning of the opinion there more clear and consistent with the conclusions reached here than they seem to have been to counsel for respondent and to the learned court that decided this case below.   If there exist any necessity for making the opinion in the *Krueger Case* more definite and certain, it is not perceived here.   What was said there should be read and considered with reference to the points decided, upon which the final decision was grounded.   Such points are, first, the law governing the

right of telegraph and similar companies to erect and maintain poles and lines on public streets and highways, does not extend beyond the public right to the street, hence is subject to the private rights of the owners of the fee of the land covered by the streets, who must be dealt with independent of such law, if such poles constitute an additional burden upon such fee; second, as regards the contingency suggested, as between the rule in jurisdictions holding that any *quasi*-public use of a street is permissible that is not so inconsistent with the original design thereof as to materially interfere therewith, under which telephone and telegraph lines in public streets have been held not to be an additional burden upon the fee, and the rule adopted by the great majority of courts and supported generally by law writers,— that a new mode of using a public highway so wholly different from the original mode of use as to really constitute a new use affects private rights, though such use may in some degree affect the original design of the way, if it requires to some extent a permanent occupancy of the street, regardless of whether such occupancy materially interferes with the primary use of the street,— under which rule the maintenance of telegraph and telephone poles on public streets has been held to be an additional burden on the fee, for which the abutting owner must be compensated, the court inclines to and adopts the majority rule above, so far as relates to telephone lines. That course was followed, as was remarked, in view of the fact that the latter rule has the greater support, as indicated, and the further fact that a middle ground for street railways was adopted for this state in *Hobart v. Milwaukee City R. Co.* 27 Wis. 194. All said in the opinion as to permanent occupancy of a street by a *quasi*-public corporation, for a purpose not originally contemplated in the acquirement of the land covered by it for public use, being of itself a new burden upon the fee thereof, was said *arguendo*, and as mere

backing for the extreme rule in favor of abutting property owners, adopted as to telephone lines, but which, as indicated in the opinion, has been, since the *Hobart Case*, contrary to the policy of the state regarding street railways, as the opinion clearly shows.

So, as we have seen, there is nothing in the *Krueger Case* when rightly understood, and when, we may properly say, understood as the language of the opinion clearly indicates, to affect the question raised in this case. That is all we deem necessary to say regarding the *Krueger Case*. It established the law for this state, governing the question presented for decision and decided, and the opinion should not be read as in any way limiting the law regarding street railways, laid down in the early case in this court.

From what has been said this case is left to turn on whether a street railroad pole, properly placed, is an additional burden on the fee of the land upon which it is located, within the principle of *Hobart v. Milwaukee City R. Co.* Such principle, briefly stated, is that a railroad, constructed and operated in the street of a city at grade, so as not to materially interfere with its common use for public travel by ordinary modes, or with private rights of abutting landowners, for the purpose of transporting persons from place to place on such street at their reasonable convenience, is not an additional burden upon the fee thereof.

In *Chicago & N. W. R. Co. v. Milwaukee, R. & K. E. R. Co.* 95 Wis. 561, the court pointed out the significance of the purpose of a street railway as indicated in the rule under consideration, namely, the carriage of passengers; also the significance of the place where such purpose may be exercised, namely, in city streets; and it was held that a railway having for its purpose the carriage of freight, a commercial railway, is not covered by the *Hobart Case*.

In *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83, the significance of that part of the rule of the *Hobart Case* rel-

La Crosse City Railway Co. vs. Higbee.

ative to where a street railway may be constructed was again
pointed out and discussed, and it was held that it does not
extend to a purely country highway.   So it will be seen that
the law governing the subject under discussion, as laid down
when first considered in this court, has not since been ex-
tended or limited.   No reason is perceived and none con-
tended for, as we understand it, why such law should now
be extended.   The issue raised must be tested accordingly.

It is claimed by appellant that no significance should be
given to the fact that in the *Hobart Case* the motive power
was obtained by the use of horses, while the contrary is
urged by counsel for the respondent, attention being called
to the following language of the chief justice in *Chicago &
N. W. R. Co. v. Milwaukee, R. & K. E. R. Co., supra:*
"There is certainly far more difference in the use of mere
horse power, as in *Hobart v. Milwaukee City R. Co., supra,*
and electric power, as in the case of the defendant, than
there is in the case of electricity and steam." When that
language is read with reference to the point under considera-
tion it will be seen that it was not intended to convey the
idea that the difference between horses as a motive power
and electricity is sufficient to render a street railroad an
additional burden upon the fee of the land on which the
street is located.   The question to which the quoted lan-
guage referred is, Why should an ordinary steam commer-
cial railroad company be required to pay for its right of
way in the public streets, to the owner of the fee of the
land upon which the railroad is constructed, and an electric
street railroad company be free from that burden?   The
mere difference in motive power would seem to be insuffi-
cient, it was said; and as a further reason why mere motive
power should not be the test, the idea was suggested ex-
pressed in the language which counsel for respondent deem
so significant.   What would be fairly gathered from all
that was said on the subject is that the motive power, of

itself, is not sufficient to class an electric street railway with
an ordinary railroad, as regards its being an added burden
upon the fee. That is in line with all or nearly all author-
ity on the subject. *Williams v. City E. St. R. Co.* 41 Fed.
Rep. 556; *Jaynes v. Omaha St. R. Co.* 53 Neb. 631; *Louis-
ville B. Mfg. Co. v. Central P. R. Co.* 95 Ky. 50; *Roebling
v. Trenton P. R. Co.* 58 N. J. Law, 666; *Reid Bros. & Co.
v. Norfolk City R. Co.* 94 Va. 117; *Briggs v. Lewiston & A.
H. R. Co.* 79 Me. 363; *Newell v. M., L. & M. R. Co.* 35
Minn. 112; *Nichols v. Ann Arbor & Y. St. R. Co.* 87 Mich.
361; *Detroit City R. Co. v. Mills*, 85 Mich. 634; Booth, St.
Ry. Law, § 80; Joyce, Electric Law, §§ 344, 345.

The subject last referred to has been considered by the
courts of most of the states of the Union, and many of the
federal courts, with the uniform result indicated. A brief
reference to particular decisions will give point to what has
been said.

In *People v. Kerr*, 27 N. Y. 188, Mr. Justice EMOTT, speak-
ing for the court, said: "I do not attach any importance to
the motive power. I have no doubt that steam will ulti-
mately be applied to carriages upon common roads, and I
suppose it might be used upon these iron ways without af-
fecting the present question,"— the rights of abutting prop-
erty owners.

In *Newell v. M., L. & M. R. Co.* 35 Minn. 112, the right to
use steam as a motive power to operate street cars was sus-
tained, the evidence showing that the motor was so de-
signed as not, in the operation of hauling street cars, to be
materially different from horse or electric power as regards
interference with ordinary public travel, or with private
rights. The court said that the test to be applied, in de-
termining whether a railway constructed on a street and
operated by the use of a steam motor is an additional
burden upon the fee, is whether it is in fact a street rail-
road as the term is commonly understood,— a railroad

constructed and operated in aid of passenger travel on the street over which it runs, by taking on and discharging passengers at street crossings,— and whether it is constructed on the street grade and operated so as not to materially interfere with the ordinary common use of the street or with the access to abutting property. *Moses v. P., Ft. W. & C. R. Co.* 21 Ill. 516, is to the same effect.

In *Detroit City R. Co. v. Mills*, 85 Mich. 634, the court considered all the elements that can be suggested why the use of electricity as a motive power should render a street railroad operated by such power different from a street railroad operated by horse power, as regards being an additional servitude upon the fee of the street owned by the abutters, and it was decided against the contentions of the abutter on all points. The decision was subsequently referred to in a case involving the same subject, and affirmed, the court remarking that there is almost a consensus of judicial opinion in that direction.

So it follows that, in determining whether a street railroad is an additional burden upon the land already set aside for the public use as a highway, we are to look to the manner of its construction and use, and not to the motive power. The latter may be steam, horse, electric, or compressed air power, and the road and its operation be consistent with the common public use for which the street was originally designed, and not violate private rights; and either may be so used, and the road be so constructed and operated, as to have the opposite effect. Electric railroads constructed in the usual way and operated by the use of the overhead trolley wire supported by cross wires fastened to poles set at the curb lines of the street, or otherwise located so as not to materially interfere with the ordinary common use of the street, belong to the former class, as we shall see later; and that has become so firmly established by the courts that it cannot be considered open to serious question.

La Crosse City Railway Co. vs. Higbee.

If the crucial test, to be applied in determining whether a street railway company is entitled to a free right of way along a public street as against abutting property owners, were whether a different motive power is used than was contemplated when the street right of the public was acquired, all new discoveries of improved modes of travel would require, as has often been remarked, dealing with the owners of the fee of the land on which the streets are located before the public could have the benefit thereof. When a new mode of using the public streets and highways is adopted, the question arises of whether it violates the rights of the owners of the fee to the streets and is inconsistent with the original design in setting the land aside for a public thoroughfare, keeping in view the fact that such design is presumed to have contemplated the adoption from time to time of improvements in mechanical appliances and their use in aid of travel upon the street,— the keeping abreast with the march of civilization, with the growth of population and consequent increase of travel, so as to adequately satisfy public needs and conveniences. Lands are set aside for public streets and highways, not for the present, with its necessities and modes of use, but for all time, with all the added demands that may be made upon the public ways within the scope of their original design, in the course of natural development that is constantly going on. Subject to that test the traction engine, automobile, and street railways, regardless of the motive power used, are entitled to the use of the street, subject to the necessity for consent by public authority in proper cases, and reasonable police regulations.

Here, as we have seen, appellant's railroad is not outside of the *Hobart Case*, 27 Wis. 194, because of the motive power used. It is within the rule in that it is for the carriage of passengers and is strictly a street railway. The complaint shows that the railway was constructed by legislative authority in all respects according to the ordinance

of the city of La Crosse granting to appellant its franchises; that the poles, including the particular pole in question, were placed at the curb lines of the streets under the supervision and direction of the proper city official; and that the mode of construction adopted generally is the usual mode where electric power is used and communicated to the car motor by means of an overhead trolley wire supported by cross wires attached to poles set at or near the curb lines of the streets. No complaint is made against the use of the streets contemplated by appellant's franchise, unless the manner in which the road is constructed on respondent's property, or the manner in which it is operated, violates private rights.

The complaint was condemned by the trial court merely because a permanent occupancy of the street, to some extent, was shown; but that is not, of itself, material in cases of street railways. As has been shown, the reasoning which the learned judge supposed he was bound by does not apply, because, unlike a telephone line, the purpose of a street railroad is within the scope of the original design of the street. Any other view would condemn *Hobart v. Milwaukee City R. Co.* and the decisions of all the courts that have sustained the rule that the use of a street for street railway purposes does not of itself impose an additional burden upon the fee. It is useless at this late day to urge that the distinction so made is unreasonable. It has had the sanction of this and other courts for upwards of a quarter of a century and is not now open to question.

On the question of whether the manner in which the road, with its appurtenances, was constructed, affects the right of the defendant to recover for an additional burden upon the fee of the street, we must come down to the simple question of whether the pole, set at the outer edge of the sidewalk on defendant's premises, interferes with access to or egress from his property. We understand from the complaint that

the pole was not located so as to interfere with any driveway or other avenue used for passage to or from the street to defendant's property outside of the street line. It merely prevented a person from stepping on or off the sidewalk at the precise point where the pole was located., That is not such an unreasonable interference with private property as to violate the rule that a street railway cannot be so constructed as to interfere with access to abutting property, without the consent of the owner thereof. As well might it be said that the mere fact, that because of the location of the rails in the street one traveling with a vehicle must approach to or go from property abutting thereon at a different angle than he otherwise would, or the fact that he cannot as conveniently use the street in front of such property for ordinary temporary purposes incident to the occupancy thereof, is a violation of private rights. Interference with access to property, within the meaning of the street railway cases, means some substantial interference. *Detroit City R. Co. v. Mills*, 85 Mich. 634; Joyce, Electric Law, § 380. A street railway pole, properly placed at the curb line of a street, no more interferes with access to or egress from property outside of the street line than a lamp post or hitching post or shade tree, and no more interferes with the ordinary use of the street for public travel.

We are aware that there is at least one case, decided in a court of last resort, where a different conclusion was reached. We refer to *Jaynes v. Omaha St. R. Co.* 53 Neb. 631. The opinion there shows that the subject treated did not receive careful study. The conclusion reached is contrary to all the authorities cited by the court. A very few cases were cited,— but a small fraction of those where courts have considered the subject under discussion,— yet those referred to were all the Nebraska court could find, so said in the opinion. The decision was based on the theory that any exclusive occupancy of any part of a street by a street railway,

is a new burden on the fee title thereof. An effort was made to harmonize the contrary holdings in the few cases cited, with the opinion, which seems to have been successful in the judgment of the writer of the opinion, yet success was reached by the exercise of judicial ingenuity that has few parallels.

A single instance will give point to what is said in regard to the manner in which decided cases were brought into harmony with the decision of the Nebraska court. *Taggart v. Newport St. R. Co.* 16 R. I. 668, one of the leading cases on the subject, which has in a measure guided many courts, was referred to. There the plaintiff, who was the owner of property abutting on the street on which a horse railway was located, which it was proposed to change to an electric street railway operated by the overhead trolley system, desired to enjoin the railway company from erecting poles and wires in front of his property, on the ground that they would constitute an additional burden thereon. The court decided to the contrary, referring to the underlying principles of the horse railway cases to justify the conclusion reached, and saying that, "It does not appear that it [the street railway operated by electricity] occupies the streets or highways any more exclusively than if it were operated by horse power." That holding the Nebraska court quickly disposed of by the remark that, "There is no question but that the law of the case is correctly laid down, if the evidence, or the record on its face, sustains the finding of fact made by the court that the electric street railway no more exclusively occupies the street than an ordinary horse railway." There was no finding of fact involved in the case. What is referred to as a finding of fact is the conclusion of the appellate court as regards whether an electric railway, with its wires over the street supported by cross wires attached to poles set in the street, "at the front margin of the sidewalks," is an exclusive occupancy of the street so as to ma-

terially interfere with its primary use or violate private rights within the principles governing horse railway cases. The decision is directly contrary to that in the *Jaynes Case.* The latter is out of harmony with all judicial and text-book authority. It was made, as it seems, by overlooking the distinction between a mere new mode of devoting a street to the use originally designed, which admits of some degree of permanent occupancy of the street without compensating the owner of the fee title, and an entirely new use of the street — a use inconsistent with its original design — which does not admit of such occupancy.

If a mere challenge can raise a question for judicial consideration, however well settled the principles involved may be, we ought to go further and inquire as regards whether the manner in which plaintiff's road is operated, as shown by the complaint, justifies the conclusion that it cannot be classed with ordinary horse-power railroads, respecting its effects upon private rights. That is a field that has been explored over and over again, as the cases heretofore cited indicate. It would be a work of supererogation to go over it again at this late day. No new light can be shed upon it. The question has been illumined by the wisdom of eminent judges of most of the courts of last resort in this country, and, with the single exception mentioned, so far as we can discover, the conclusion has been reached that a street railway, having its track laid so as to conform to the surface of the street, regardless of the motive power used or how applied, so long as neither private rights nor the common use of the street for public travel is materially affected, is governed by the law early laid down as to street railways operated by horse power; and that the ordinary electric street railway with its trolley wire supported by cross wires attached to poles set near the outer edge of the sidewalks, with due regard to the abutting property owner's convenience, satisfies the essential mentioned. Such a rail-

way is but an improved method of using the street for public travel, which was the original purpose to which it was devoted. So was the horse railroad in its day. The same principles that justify one without purchasing the right from abutting property owners, justify the other. There is no limit to the public right to use a street, and every part of it, so long as that use is in aid of public travel thereon and does not unnecessarily interfere with the common use of the way by ordinary modes of travel, and is no substantial impairment of private rights of property. An electric car, as compared with a horse car, in regard to freedom from interfering with private rights, is superior as regards relieving the street, because it moves more rapidly, is started and stopped with greater facility, and will readily move the greater number of persons the greater distance in a given time. It is superior as regards actually obstructing the street because of its more rapid motion and shorter stops. These considerations, and many others that might be mentioned, have moved courts to declare the law as here indicated. The following are a few of the multitude of cases directly on the subject: *Briggs v. Lewiston & A. H. R. Co.* 79 Me. 363; *Taggart v. Newport St. R. Co.* 16 R. I. 668; *Williams v. City E. St. R. Co.* 41 Fed. Rep. 556; *Nichols v. Ann Arbor & Y. St. R. Co.* 87 Mich. 361; *Halsey v. Rapid Transit St. R. Co.* 47 N. J. Eq. 380; *Lockhart v. Craig St. R. Co.* 139 Pa. St. 419; *Railway Co. v. Telegraph Asso.* 48 Ohio St. 390; *Louisville B. Mfg. Co. v. Central P. R. Co.* 95 Ky. 50; *Dean v. Ann Arbor St. R. Co.* 93 Mich. 330; *Ogden City R. Co. v. Ogden City,* 7 Utah, 207; *Howe v. West End St. R. Co.* 167 Mass. 46; *Birmingham T. Co. v. Birmingham R. & E. Co.* 119 Ala. 137; *Chicago, B. & Q. R. Co. v. West Chicago St. R. Co.* 156 Ill. 255; *Cumberland T. & T. Co. v. United Electric R. Co.* 93 Tenn. 492; *Taylor v. P., K. & Y. St. R.* 91 Me. 193.

In Booth on Street Railway Law [§ 83], published in 1892,

after a review of all judicial authorities down to that time, the author said: "After a full consideration of the various objections raised to the use of electricity, every court of last resort to which the question has been submitted has held that the electric street railway does not constitute a new servitude, . . . does not entitle abutting owners to compensation." In Joyce on Electric Law [§§ 335–341], published in June of this year, it is said that, in every state where a street railway operated by horse power has been held not to create a new burden upon the fee title to the street, entitling the owner of such title to compensation, the holding has been the same as regards an ordinary electric street railway, except in Nebraska in *Jaynes v. Omaha St. R. Co.* 53 Neb. 631. In *Cumberland T. & T. Co. v. United E. R. Co.*, *supra*, a very well considered case decided in 1893, it is said that, "with rare unanimity the courts have concurred in holding that an electric street railway, constructed and operated upon the streets by means of an overhead trolley wire supported by poles, with permission of the public authorities, for the transportation of passengers only, and conforming its track to the surface of the ground, is not an additional servitude upon the fee within the streets, but a legitimate use of the streets within the original general purpose of their dedication.".

The length to which we have gone in considering the question presented on this appeal is only justified by the fact that the precise question has not before been submitted to this court for decision, and was reserved for further consideration, in *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83, in such a way as to invite its presentation when a proper case therefor should be made up. It seems clear that in reaching a conclusion that the demurrer to the complaint was improperly sustained, the principles of *Hobart v. Milwaukee City R. Co.* 27 Wis. 194, are followed and neither limited nor extended. It will be noted that this opinion does not lead to

the conclusion that an electric street railway pole may be . placed at any point in the street near the outer edge of the sidewalk without being an added burden upon the fee title. Reasonable regard must be had, in locating such poles, for the convenience of abutting property owners in the enjoyment of their property. We gather from the complaint that the pole in this case was properly placed in respect to that rule.

*By the Court.*— The order appealed from is reversed, and the cause remanded for further proceedings according to law.

As to what use of a street or highway constitutes an additional burden, see note to *Western R. Co. v. Alabama G. T. R. Co.* (96 Ala. 272), in 17 L. R. A. 474.— REP.