# CASES DETERMINED

# August Term, 1908.

---

BELOIT, DELAVAN LAKE & JANESVILLE RAILWAY COMPANY, Appellant, vs. MACLOON and others, Respondents.

*April 2—September 29, 1908.*

*Street and electric railways: Condemnation of streets for interurban road: Grant of "the use" of the street by city council: Dismissal of proceedings.*

1. Under sec. 1863a, Stats. (Supp. 1906), giving to a street or electric railway corporation the right to condemn a street for the purposes of an interurban railway where *the use* of the street has first been granted to the company by a franchise duly passed by the city council, there can be no such condemnation where the only right which has been granted by the city council is a right to use the street for purely urban railway purposes.

2. If the proceedings in this case were brought to condemn the right to maintain an urban railway only on the street they were properly dismissed because no such condemnation is necessary.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

This is a condemnation proceeding brought by a street and interurban electric railway company to condemn the interests of adjoining property owners in a street in the city of Janesville, and the company appeals from an order denying the application and dismissing the proceedings.

The condemnation petition was filed June 2, 1904. The respondents severally own certain lots on Wall and Franklin

streets in the city of Janesville, upon which streets the petitioner seeks to condemn a right to operate its railway. The railway was in fact laid in June, 1902, and has been since operated by the petitioner both as a street and interurban railway. The petition for condemnation alleged, among other things, that the petitioner was a street railway company duly incorporated under ch. 86, Stats. (1898); that by virtue of certain ordinances passed by the common council of the city of Janesville May 13, 1901, and May 12, 1902, the petitioner was granted a fifty-year franchise to construct, maintain, and operate "a street railway for the carriage of passengers" upon certain streets in said city, including the streets over which it seeks condemnation in this proceeding, and that it has constructed and now operates such street railway and has extended the same into the adjoining township of Rock to meet an extension of another street railway operated by it in the city of Beloit, thus forming an interurban connection between the two cities so that passengers from Beloit and other places are transported over its line into the city of Janesville; and further, that it intended to use the streets and property to be condemned for street railway purposes.

The respondents answered, denying that the petitioner had, either by its articles of incorporation or by either of the ordinances named in the petition, any authority to construct or operate any railway on the streets sought to be condemned, and further alleging that it did not operate a street railway, but a commercial railway for the carriage of passengers and baggage from Janesville to Beloit, Rockford, and other points, and that the streets sought to be condemned were not necessary for the operation of its railway.

Upon the trial the facts were stipulated in substance as follows: The petitioner was incorporated under ch. 86, Stats. (1898), in March, 1901, its business being to "construct, maintain, purchase, lease, and acquire a railway or railways

for the carriage of persons and property, including mail, express matter, baggage, freight, or any thereof, and the furnishing of light, heat, and power," and its location being at the city of Beloit. In August, 1901, it duly amended its articles of incorporation, and by such amendment declared that the purpose of the corporators was to form a corporation under ch. 86 and under secs. 1862, 1862a, 1863, 1863a, ch. 87, Stats. (1898), and the laws amendatory and supplemental thereto, "for the business and purpose of purchasing or otherwise acquiring, constructing, equipping, leasing, maintaining, and operating by electricity or other power a street railway for the transportation of passengers in the city of Beloit, county of Rock, state of Wisconsin, and elsewhere as it may by law be authorized to do, . . . and of acquiring, building, maintaining, operating, and using any street railways for the transportation of passengers or for the transportation of mail, express, merchandise and freight, or both or all, in any city, village, or town, and to extend its railway or railways from any point in one city, village, or town to, into, and through any other city, village, or town." Other purposes were also inserted which are unnecessary to be inserted here.

On the 12th of April, 1901, the petitioner applied to the city council of the city of Janesville for a franchise giving it the right to operate an *electric street* railway on certain named streets on the east side of Rock river, in said city, none of which streets intersected or connected directly with either Wall or Franklin streets. Said application was regularly published in all the daily issues of the Janesville Recorder, the official paper of Janesville, beginning April 13th and ending April 27th, except that it was not inserted in the issue of Sunday, April 14th. At a regular meeting of the council held April 29, 1901, proof of publication was filed, and the application was referred to a committee, which committee at the same meeting presented a report recom-

mending the passage of an ordinance granting petitioner
the right to construct and operate an electric railway *for the
carriage of passengers* upon certain named streets in the city
on the *west* side of Rock river, thus making a complete
change of route from one side of the river to the other. The
council passed the ordinance recommended by the commit-
tee April 29th aforesaid. It was afterwards vetoed by the
mayor, but passed over the veto May 13, 1901. This ordi-
nance purported to give the railway company the right to
construct a loop around one block bounded on the east by
Franklin street, north by West Bluff street, west by Jackson
street, and south by Wall street, and passing the premises of
the respondents *Macloon* and *Murdock*. On May 12th an-
other ordinance amending the first-named ordinance was
passed, which gave petitioner the right to include another
block in the loop, thus going one block further west and pass-
ing the premises of the respondent *Bronson,* and continuing
to pass the premises of *Macloon* and *Murdock* in the same
manner as before. No notice of application for the pas-
sage of the amended ordinance was published. Both ordi-
nances were duly accepted by the petitioner.

On or about June 20, 1902, the petitioner began the con-
struction of its railway on Wall and Franklin streets in
front of the respondents' several lots, and on that day the re-
spondents, by notice in writing, forbade the construction of
the road, but the petitioner proceeded with and completed
the road and extended it outside of the city to meet an ex-
tension of an electric railway owned by it extending to the
cities of Beloit and Rockford, and began and continued to
operate an electric interurban railway between the three cit-
ies for carriage of passengers and baggage, using the loop
for the passage and turning of its interurban cars, and also
transacting a city street railway business in Janesville over
the same route and in the same cars. No direct action by
*quo warranto* was ever commenced to contest the validity of

the said ordinances, but soon after the construction of the road the respondents commenced separate actions in equity to enjoin the construction and operation of the road, on the ground that it was an interurban railway and not a street railway, and the action of the respondent *Bronson* came to trial in the spring of 1904, and findings were made June 2, 1904, to the effect that the petitioner's railway constituted an additional burden upon the title of the owners of adjoining lots, which entitled them to compensation for the use of the street, and judgment was entered July 12, 1904, enjoining the petitioner from using the street for railway purposes, but providing that the enforcement of the injunction be temporarily suspended in order that petitioner might prosecute condemnation proceedings. The injunction actions brought by the respondents *Macloon* and *Murdock* are still pending.

The circuit court made findings of fact in accordance with the stipulated facts, and concluded that no application for the franchise containing the substance of the privileges asked for had been made as required by sec. 940*b*, Stats. (1898), and hence that the petitioner was not entitled to condemn, and dismissed the proceedings.

The cause was submitted for the appellant on the brief of *Thos. S. Nolan,* and for the respondents on that of *Charles E. Pierce* and *William Smith.*

The following opinion was filed June 5, 1908:

WINSLOW, C. J. Limited powers of condemnation have been given to street and electric railway companies by our statutes (sec. 1863*a*, Stats.: Supp. 1906), but with the proviso that such powers shall not apply to any city or village street, alley, or viaduct unless the use thereof shall first be granted to such company by a franchise duly passed by the governing body of the city or village. By sec. 940*b*, Stats. (1898), it is provided that no franchise shall be granted by

the governing body of any city or village until the application therefor containing the substance of the privileges asked for shall be filed with the village or city clerk and published in the official paper for not less than two weeks previous to action upon such application. The principal contention made by the respondents in the trial court and in this court was that this latter statute had not been complied with prior to the passage of the street railway franchise, because the application specified certain streets upon one side of the river as the streets over which a right of way was desired, while the ordinance as finally passed gave the company an entirely different route over certain streets upon the other side of the river. The trial court agreed with this contention and held that there had been no application filed or published containing the substance of the privileges asked for, and on this account denied the petition for condemnation.

The appellant strongly urges that the respondents cannot question in this proceeding the validity of the franchise on account of mere irregularities in its passage, because such question can only be raised at the suit of the state; and in support of this contention the appellant relies upon the case of *Stedman v. Berlin,* 97 Wis. 505, 73 N. W. 57, and the cases which have followed and reaffirmed the doctrine there laid down. The appellant further contends that in any event the application was entirely sufficient under the statute, even if the question be one which can be raised in this proceeding. The arguments in support of these propositions are persuasively made, but we find it unnecessary to consider them because of the conclusions reached upon another and more fundamental question which is fairly presented by the record, but to which little attention has been paid. The petitioner is authorized by its articles of incorporation to build and operate interurban railways as well as purely urban or city railways. It is in fact operating an interurban railway business upon the streets in question, and, while its petition

alleges only its intention to condemn for street railway pur-
poses, it is manifest that in fact it seeks condemnation in its
character as an interurban railway and for interurban pur-
poses alone, because no condemnation is either necessary or
proper for purely city railway purposes.    It has a fran-
chise from the city to build and operate a city street railway,
but none to build or operate an interurban railway.    Does this
satisfy the terms of sec. 1863a, Stats. (Supp. 1906), which
only gives the right to condemn a street where the *use of the
street* has first been granted to the company by a franchise
duly passed by the city council?    In other words, Can there
be condemnation of a street for interurban purposes where
the only right which has been granted by the city council is
a right to use the street for purely city railroad purposes?
The answer to this question depends, of course, upon the
proper construction of the section named, and this depends
largely upon the history of the section as well as of the ex-
igencies which called it into existence.

It is well understood that this court early held that the
ordinary street railroad carrying passengers alone did not
constitute an additional burden on the fee of the street, and
hence that it could be built and operated without condemn-
ing the rights of adjoining property owners.    When, how-
ever, in the natural course of events, the interurban railway
came into existence by a process of evolution and commenced
to carry passengers from city to city, it was at once held that
the use of highways for such purposes was an additional bur-
den, for which the adjoining property owner must be com-
pensated.    *Chicago & N. W. R. Co. v. M., R. & K. E. R. Co.*
95 Wis. 561, 70 N. W. 678; *Zehren v. M. E. R. & L. Co.* 99
Wis. 83, 74 N. W. 538.

The course of the legislative evolution of the interurban
railway as a corporation distinct from the true city street
railway corporation was quite fully traced in the case of
*Milwaukee L., H. & T. Co. v. M. N. R. Co.* 132 Wis. 313,

112 N. W. 663. In that case it was shown that the present interurban railway had its legislative origin in ch. 221, Laws of 1880, which authorized the formation of corporations for the building and operating by animal power of railways for the carriage of passengers or freight upon the highways of villages and towns, but not in cities. The various acts by which the rural railway or tramcar corporation was given greater powers (until by ch. 425, Laws of 1901, it was authorized to enter and operate its lines in cities as well as in villages and country towns, and thus became a fully developed interurban railway) were sufficiently noticed in that case and need not here be repeated. One feature of the legislation, however, which was not particularly significant in that case, but is so in the present case, remains to be noticed. Every act governing such corporations from the rural tramway act of 1880 up to and including the interurban act of 1901 made it an absolute essential that the consent of the local governing body should be obtained before the corporation could lay a foot of track or operate a car upon a street or highway. That this consent was not a consent to the building and operation of a mere street railway for the carriage of local passengers only, but a consent to the building and operation of a rural or interurban road for carriage of through passengers or freight, seems very certain. Any other construction of the requirement would seem absurd. When, therefore, the first act was passed granting limited powers of condemnation to both street and electric (or interurban) railway corporations (ch. 175, Laws of 1897; sec. 1863a, Stats. 1898), the interurban railway could use no highway until it had obtained the consent of the local government to use the same for interurban purposes. This first condemnation act forbade the condemnation of streets or alleys in cities, and the amending act of 1899 (Laws of 1899, ch. 306) contained the same limitation and extended it to village streets; but it was realized two years later that the

interurban railway, in order to perform its proper functions, must be clothed with the power to condemn the right to use city and village streets, and by ch. 465, Laws of 1901, sec. 1863a, Stats. (1898), was rewritten, and the provision forbidding the condemnation of city or village streets was amended by adding the words "unless *the use* of such street, alley or viaduct shall first be granted to such street or electric railway company by a franchise duly passed by the board of trustees or common council of such village or city."

Now the simple question is: What is the character of "the use" of a street which must first be granted to an interurban company before it can condemn? In view of the history of the legislation, and the fact that the law had always required that the consent which an interurban company must obtain from the local governing bodies was the consent to the use of a street or highway *for interurban purposes,* must it not be held that *"the use"* referred to in the last-named act was the same use consent to which the law had always required, namely, "the use" for interurban purposes, and this alone? It seems to us that this question must be answered in the affirmative. The fact that the same company may have been granted "the use" of the street for purely city street railway purposes cannot logically be held to meet the requirement that "the use" of the street must first be granted by the public authorities before condemnation for interurban purposes can be had. As well might it be claimed that a grant of "the use" of the street for the erection of poles and carrying of wires for an electric lighting system would satisfy the requirement.

The question has not been met before in this court. It doubtless might have been raised in the cases of *Abbott v. Milwaukee L., H. & T. Co.* 126 Wis. 634, 106 N. W. 523, and *Marsh v. Milwaukee L., H. & T. Co.* 134 Wis. 384, 114 N. W. 804, but in both these cases the right to condemn was not challenged, and hence the question before us in the pres-

ent case was waived. This construction is also in accord with the principles governing condemnation by general commercial railway companies, for these last-named companies acquire the right of condemnation only by virtue of their adoption of statutory articles of incorporation which under the statutes operate as a grant by the state to cross or occupy streets. The idea in both cases is that the grant of the public consent must precede the condemnation of the private interest. This seems entirely logical and eminently reasonable.

The necessary conclusion is that the judgment below was right. If, as alleged in the appellant's petition, this proceeding is brought to condemn the right to maintain and operate a city street railway only, then it was rightly dismissed because no such condemnation is necessary. If, on the other hand, it is brought to condemn the right to maintain and operate an interurban railway, it was rightly dismissed because the petitioner had never acquired from the common council the right to use the street for that purpose.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied September 29, 1908.