City of Milwaukee, Respondent, vs. Milwaukee Electric Railway & Light Company, Appellant.

*September 25, 1920—March 8, 1921.*

*Street railways: Distinction between street and interurban railways: Jurisdiction of courts: Questions relating to franchises: Unlawful use of city streets: Injunction at request of city: Estoppel: Use of streets without franchise: Continuing trespass: Prescription: Eminent domain: Compensation to adjoining owners: Highways: Purpose of dedication.*

1. Neither the railroad commission, whose function is to establish reasonable street-car rates, nor the courts can interfere with the granting of a street railway franchise, which is a legislative act; but whether the company needs a further franchise than it has to carry on its business within the limits of a given city is a judicial question within the jurisdiction of the courts.

2. Though the right to prevent the unlawful exercise of a franchise by a street railway company rests solely with the state, to be asserted in *quo warranto,* a city has authority in its governmental capacity and is charged with the duty to maintain the streets for lawful travel, and as an incident of that duty can have their unlawful use by a street railway company prevented by injunction. In its proprietary capacity as the owner of lots a city can, like any other owner, sue for injunction to restrain the placing of an additional burden on the streets abutting its lots without compensation.

3. The fact that a city has acquiesced for more than twenty years in the use of its streets by a street railway company does not estop the city from asserting its right to prevent such use.

4. A city seeking to prevent the use of streets for interurban railway traffic cannot, in its proprietary capacity as owner of lots

Milwaukee v. Milwaukee E. R. & L. Co. 173 Wis. 400.

abutting on the streets, resort to condemnation, in the absence of a franchise for interurban traffic.

5. The use of city streets by a street railway company without a franchise permitting the particular use is a continuing trespass on the streets, which may be restrained by injunction.

6. As against the city in its governmental capacity or as against the public, a continuing trespass on city streets by a street railway company using the streets for a purpose not permitted by its franchise cannot ripen into a right.

7. This court has held (a) that city streets are subject to ordinary surface street railway service without compensation to the owners of abutting lands; (b) that country highways or streets outside of city limits are not subject to ordinary street railway service without extra compensation to the owners of abutting lands who thereby suffer serious impairment to their right of access to such lands; and (c) that neither city streets nor country highways are subject to interurban railway service without compensation to the owners of abutting lands.

8. The purpose of dedicating streets and highways for public use is to permit travel thereover, and the means by which travel is effected is secondary to the primary purpose and may change from time to time with new inventions and changed conditions.

9. Urban surface street car passenger service is the transportation of passengers in suitable cars over the streets of a city operated so as to permit them to enter and leave the cars at reasonable intervals, regardless of the initial point from which the car or passenger comes or the point to which they are destined, the criterion being the character of the service rendered by the cars while on the city streets.

10. Interurban railway passenger traffic as to a given city is the transportation between it and other cities or municipalities of passengers without thereby rendering reasonable or the prescribed street-car service in such city.

11. The operation upon an urban surface street railway by the owner of the franchise therefor of cars reasonably suitable for street-car service, and which give street-car service in such manner as the railroad commission may prescribe, or, in the absence of regulations by the commission, give reasonable street-car service, does not subject the adjacent property within the city limits to an additional servitude, though such cars may start from or be destined for points outside the city limits or be used in strictly interurban service outside of the city limits; and the operation of such cars within the city limits does not require any franchise additional to the urban surface street-car franchise. *Younkin v. Milwaukee L., H. & T. Co.* 120 Wis. 477, overruled.

12. Where the street railway company had a franchise for carry-
ing freight to a certain street, which was the city limits, it
had the right to continue carrying freight to such street after
the city limits were extended.

APPEAL from a judgment of the circuit court for Milwau-
kee county: E. T. FAIRCHILD, Circuit Judge. *Reversed.*

Action by the city of *Milwaukee* in its governmental
capacity and also in its proprietary capacity as owner of a
large number of lots abutting upon streets over which the de-
fendant operates its street railway system to enjoin the de-
fendant, which has no interurban franchise in the city of
*Milwaukee,* from carrying upon its street railway system in
the city of Milwaukee passengers brought from or carried to
points outside of the corporate limits of the city. The
trial court defined an interurban passenger as one whose
passage starts at a point within the city for a destination
outside of the city limits or starts from a point outside of
the city limits and comes to a point within the city limits.
Based upon this definition of an interurban passenger, he
found that interurban service was rendered wherever an
interurban passenger was carried and found within what
specific points on each of defendant's lines within the city
interurban service was rendered. As conclusions of law
the court held (a) that the city in its governmental capacity
was entitled to an injunction restraining the defendant from
operating cars carrying interurban passengers between the
points and over the portions of the line described in the
findings of fact; (b) that the city in its capacity as owner
of the properties described in the findings of fact was en-
titled to an injunction restraining the defendant from operat-
ing cars carrying interurban passengers in front of such
properties; and (c) the city is entitled to an injunction re-
straining the carriage of freight across the city limits as
found in finding number 2. From a judgment entered
accordingly the defendant appealed.

For the appellant there were briefs by *Van Dyke, Shaw,*

*Muskat & Van Dyke,* attorneys, and *Miller, Mack & Fairchild,* of counsel, all of Milwaukee; and the cause was argued orally by *James D. Shaw* and *Edwin S. Mack.*

*Clifton Williams,* city attorney, for the respondent.

The following opinion was filed December 14, 1920:

VINJE, J.  Defendant's contention that the court has no jurisdiction of the action because it necessarily prevents the enforcement of an order of the railroad commission is not tenable.  It is the function of the railroad commission to establish reasonable street-car rates.  It is not concerned with the question of whether or not the street car company has the requisite franchise to operate its cars.  That is purely a judicial question.  The granting of the franchise is a legislative act, which neither the railroad commission nor the courts can interfere with.  Whether defendant needs a further franchise than it has to carry on its business within the limits of *Milwaukee* is the main question for determination in this case, and it is a judicial question within the jurisdiction of the trial court.

Defendant also claims that the city in its governmental capacity has no power to maintain this action, because it is said the city has no rights or duties with respect to the unlawful exercise of franchise, since such right rests solely with the state to be asserted in an action of *quo warranto.* That is true.  But this is not an action to annul a franchise. The city is charged with the duty of maintaining streets for lawful travel, and as an incident of that duty it has the right to inquire if a certain kind of travel is lawful, and if not to have it prohibited by injunction.  It claims defendant has no franchise for interurban traffic and that it is carrying on such traffic on the streets of the city.  Streets are dedicated for lawful travel, and a city has the right to see that the purpose of the dedication is not departed from by the unlawful use of streets.

As the owner of a large number of lots abutting upon streets on which defendant's tracks are laid, the city in its

proprietary capacity may maintain this action to prohibit any burden additional to a lawful street use being imposed upon them without compensation. *Chicago & N. W. R. Co. v. Milwaukee, R. & K. E. R. Co.* 95 Wis. 561, 70 N. W. 678; *Younkin v. Milwaukee L., H. & T. Co.* 112 Wis. 15, 87 N. W. 861; *Beloit, D. L. & J. R. Co. v. Macloon,* 136 Wis. 218, 116 N. W. 897; *Schuster v. Milwaukee E. R. & L. Co.* 142 Wis. 578, 126 N. W. 26. For, as was said in *Milwaukee v. Milwaukee,* 12 Wis. 93, 101, "In its character of a political power, or local subdivision of government, it is a public corporation, but in its character of owner of property it is a private corporation, possessing the same rights, duties, and privileges as any other." See, also, *Eau Claire Dells Imp. Co. v. Eau Claire,* 172 Wis. 240, 179 N. W. 2.

In view of what has been held it cannot be said that the city's case is without equity if it can establish an unlawful use of its streets either as to its governmental or proprietary capacity. The fact that it has for a considerable period of time, upwards of twenty years the court found, acquiesced in such use, if any, does not estop it from now asserting its claim. *Wilbur L. Co. v. Milwaukee L., H. & T. Co.* 134 Wis. 352, 114 N. W. 813; *Schuster v. Milwaukee E. R. & L. Co.* 142 Wis. 578, 126 N. W. 26. In its proprietary capacity it could not resort to condemnation in the absence of a franchise for interurban traffic. *Beloit, D. L. & J. R. Co. v. Macloon,* 136 Wis. 218, 116 N. W. 897. The use of the streets by the defendant without a franchise, where one is needed, constitutes a continuing trespass. *Ibid.* As against the city in its governmental capacity, or as against the public, the continuing trespass, if any, has not ripened into a right.

Before we consider the question of whether or not the defendant has made a use of the city's streets not warranted by its franchise, it is desirable to state briefly what our court has held upon this and related questions. It has held:

(a) That city streets are subject to ordinary surface

street railway service without compensation to the owners of abutting lands. *Hobart v. Milwaukee City R. Co.* 27 Wis. 194; *Chicago & N. W. R. Co. v. Milwaukee, R. & K. E. R. Co.* 95 Wis. 561, 70 N. W. 678; *La Crosse City R. Co. v. Higbee,* 107 Wis. 389, 83 N. W. 701; *Beloit, D. L. & J. R. Co. v. Macloon,* 136 Wis. 218, 116 N. W. 897. (b) That country highways or streets outside of city limits are not subject to ordinary surface street railway service without extra compensation to the owners of abutting lands who thereby suffer serious impairment to their access thereto. *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83, 74 N. W. 538. (c) That neither city streets nor country highways are subject to interurban surface railway service without compensation to the owners of abutting lands. *Chicago & N. W. R. Co. v. Milwaukee, R. & K. E. R. Co.* 95 Wis. 561, 70 N. W. 678; *Younkin v. Milwaukee L., H. & T. Co.* 120 Wis. 477, 98 N. W. 215; *Beloit, D. L. & J. R. Co. v. Macloon,* 136 Wis. 218, 116 N. W. 897; *Schuster v. Milwaukee E. R. & L. Co.* 142 Wis. 578, 126 N. W. 26.

None of the cases define what constitutes passenger street railway service nor what constitutes passenger interurban railway service, though it is apparent that the additional burden must grow out of some difference in the service. In *Schuster v. Milwaukee E. R. & L. Co.* 142 Wis. 578, 126 N. W. 26, it was found that the interurban cars were larger than street cars; that they usually ran at a greater speed and often in trains of two or more and stopped after reaching the city limits to discharge only interurban passengers, and had a terminal station for the discharge of most of their passengers. This constituted a substantial difference from ordinary street-car service, especially as to the discharge of passengers. In *Beloit, D. L. & J. R. Co. v. Macloon, supra,* the interurban road had not secured from the city council a right to use the street for interurban railway purposes but only for urban street railway purposes, and it was held that it could not condemn for interurban

uses. In *Younkin v. Milwaukee L., H. & T. Co.* 120 Wis.
477, 98 N. W. 215, decided in 1904, the interurban cars
ran from Milwaukee through Waukesha and to Waukesha
Beach, a distance of about three miles beyond Waukesha.
The cars were held to render interurban service in Waukesha
though they ran through the city as local cars and rendered
the usual local street-car service.  There is nothing to show
they did not render such local service in a reasonably
adequate and satisfactory manner.  But the court reached
the conclusion that, since they were in interurban service
before they reached Waukesha and after they left it, they
were in such service within the limits of Waukesha.  In
other words, the decision went upon the basis of the origin
and destination of the cars rather than upon the character
of the service they rendered while in Waukesha.  The
question presented is, Shall we adhere to that basis or shall
we seek to define passenger street-car service and passenger
interurban service upon a basis of difference in service?
The latter seems to be not only the most logical but also the
only criterion that will permit of a change in method from
time to time as new inventions or uses spring into being.

Law is the rule of reason applied to existing conditions.
Obviously, when conditions change there must be a corre-
sponding change in the law, else it would cease to be a rule
of reason and would become a mere arbitrary static rule.
Law indicating, as it does, the just relations that obtain
under given conditions, can be static only so long as the
conditions to which it applies remain static.  It does not
prevent new conditions from arising, for if it did, and could,
progress would be arrested.  On the contrary, it aims to
adjust relations to conditions as they exist when rights or
obligations are claimed under them, and in proportion as it
does that equitably it performs its true function.  When-
ever it arrests or clogs true progress it ceases to function
truly.  To do justice, then, under existing conditions, is its
paramount office—all else, even the most venerable prece-

dents, must yield to that office. So much by way of an academic introduction to the legal solvent that must be applied to the question now before us.

In the development of every industry important changes take place from time to time. This is true of street-car and interurban service as well as of other industries. Changes have taken place in the size of rails used, in the power employed, in the size and weight of cars, in the rate of speed, in the frequency of stops, and in many other respects. First we had animal power, then cable cars, and now electric cars. We find much less difference within city limits between the ordinary interurban and street railway service than we did a few decades ago. The California court points this out, saying:

"There has recently come into existence a certain class of railroads, known as interurban roads, which are a sort of hybrid, having in some respects the characteristics of the ordinary railroad, and in others those of the street railroad. Within the limits of the cities which they enter they usually pass along the streets, and perform the ordinary functions of street railroads, stopping where desired to let passengers on or off, and serving the public need for local street travel. Outside the cities, on their way from one city or town to another, they frequently travel upon a roadway obtained from private persons, not upon a public road, and stop, as in case of ordinary railroads, only at stations established by them for that purpose." *San Francisco & S. M. E. Co. v. Scott,* 142 Cal. 222, 75 Pac. 575.

The purpose of dedicating streets and highways for public use is to permit travel thereover. The means by which travel is effected is secondary, the purpose is primary. *La Crosse City R. Co. v. Higbee,* 107 Wis. 389, 83 N. W. 701. The means may change from time to time, dependent upon man's inventive genius. Not so long ago animal power was the exclusive means of travel whether used to propel the animal alone, as in walking, or in transporting passengers by means of an animal-drawn vehicle. Naturally, therefore, it was

considered that streets were dedicated to the use of walking and driving only—limiting driving to animal power. With the advent of steam and electricity came other power for street travel use. Since the primary use of streets is travel—the transportation of persons and goods thereover,—any method of accomplishing that purpose in a reasonably safe, convenient, practical, and effective way constitutes a legitimate street use.

The growth of large cities has taxed the inventiveness of man to the utmost to solve the question of passenger transportation therein, and especially in their congested business centers. We now have surface, elevated, and subway tracks. We have local, limited, or express cars. They run singly, or more often in trains of considerable length. We thus see that man's necessities and his ability to meet those necessities have materially changed street travel as to method though the street purpose remains the same. The use of the streets is open to all who wish to travel thereon whether for business or pleasure, whether residents or nonresidents. It is to the interest of a city to make its streets convenient for the easy travel thereon of all who live within or visit it.

In view of the foregoing considerations, we hold that urban surface street-car passenger service is the transportation of passengers in suitable cars over the streets of a city operated so as to permit them to enter and leave the cars at reasonable intervals. The initial point from which the car or passenger comes or the point to which they are destined is immaterial. The criterion is the character of the service rendered by the car while on the city streets. If that is an ordinary or reasonable street-car service as to fitness of car, rate of speed, and frequency of stops for passengers to enter and leave, then while on the city streets such service is street-car service though the car may come from or enter interurban service on the same trip. In

*Jeffers v. Annapolis* (Md.) 68 Atl. 361, it was held that an electric railway is none the less a "street" railway within city limits, under ordinances authorizing it to use certain streets, though when it leaves the city it becomes an interurban railway. So held at the suit of an owner of an abutting lot within the city who sought compensation but was denied it. And in *State ex rel. Dennison v. Seattle R. & S. R. Co.* 64 Wash. 167, 116 Pac. 638, it was held that a railway company which performs the service of an ordinary street railroad in a city under a franchise granted by the city is, as to such service, a street railroad though it is also an interurban railroad engaged in carrying passengers beyond the limits of the city.

We further hold that, as to a given city, interurban railway passenger traffic is the transportation between it and other cities or municipalities of passengers without thereby rendering reasonable or the prescribed street-car service in such city. In interurban service the streets of the city are used for a purpose foreign to their dedication by being transformed into a right of way for a commercial railroad which does not render reasonable street service. Hence the additional burden upon abutting lands.

From the foregoing it follows that the operation upon an urban surface street railway by the owner of the franchise therefor of cars reasonably suitable for street-car service, and which give street-car service in such manner as the railroad commission may prescribe, or, in the absence of regulations by the commission, give reasonable street-car service, does not subject the adjacent property within the city limits to an additional servitude, though such cars may start from or be destined for points outside the city limits or be used in strictly interurban service outside of the city limits; and the operation of such cars within the city limits does not require any franchise additional to the urban surface street-car franchise.

Since we reach the conclusion that the trial court entertained an erroneous view as to what constitutes interurban service, it follows that conclusions of law (a) and (b) are also erroneous and that the case must be sent back for a new or further trial as to whether or not the defendant renders any interurban service within the city of *Milwaukee*, and, if so, on what lines and between what points. It is probable that from the evidence already taken that fact could be determined. But we think it just to the parties, in view of the difference between the trial court's conception of interurban service and this court's view thereof, to permit them to introduce such further testimony as they may desire, to the end that all the evidence applicable to the law as herein contained may be taken. We see no reason for disturbing the trial court's conclusion (c).

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.

The following opinion was filed March 8, 1921:

PER CURIAM. Our attention is called to the fact that defendant's Milwaukee-Waukesha line had a franchise for carrying freight east as far as Twenty-second avenue, which was formerly the city limits of Milwaukee. They have since been extended further west. In the opinion it was stated that we saw no reason for disturbing the trial court's conclusion (c), which was that the city is entitled to an injunction restraining the carriage of freight across the city limits as found in finding number 2. In view of the change in the city limits this conclusion will be construed to authorize the defendant to carry freight on its Milwaukee-Waukesha line as far east as Twenty-second avenue, the former city limits.

A motion for a rehearing was denied, without costs, on March 8, 1921.