## CLAIM OF ABUTTING OWNER TO PART OF ROADWAY.

Court of Appeals for Hamilton County.

THE CITY OF CINCINNATI v. EMMA F. LEEDS.[*]

Decided, April 25, 1914.

*Dedication—Of a Roadway Where Not in Accordance With Statute— Easement Enjoyed by a Turnpike Company is Vested in the Public —Encroachments on Roadway.*

1. While there was no statutory dedication of what is now known as the Linwood road, the plat and deeds which are in evidence, taken in connection with the use of the strip as a public highway, have operated as a dedication to public use.
2. Such dedication was in nowise prevented by the fact that the way, to which the plat and deed refer and with reference to which they were drawn, was for a long period the property of and under the control of a turnpike company.

*Walter M. Schoenle,* City Solicitor, *Frank K. Bowman,* Assistant City Solicitor, *Alfred Bettman* and *O. S. Bryant,* for plaintiff in error.

*C. Hammond Avery* and *Julius G. Penn,* contra.

JONES, O. B., J.; SWING, J., and JONES, E. H., J., concur.

In 1815, John Morten became the owner of a tract of land of about sixty-five acres fronting on the south side of what is now known as Observatory avenue. About 1847, steps were taken before the county commissioners for the purposes of· establishing the county road southeastwardly through this land from Observatory avenue to Wooster pike, under which viewers

---

[*]Motion to dismiss petition in error sustained by Supreme Court December 1, 1914.

were appointed who reported a line of road and recommended that same be opened as a sixty foot road. The record shows an objection, or notice of appeal given on the part of a property owner, owning land near Wooster pike, not however affecting the part of the Morten property, and the record fails to show that this road was ever opened in accordance with said view.

In 1852 a turnpike or plank road was established through this land. Under a special act, found in Volume 49 Ohio Laws, 730, a company was organized under the name of the Union Bridge & Walnut Hills Turnpike Company,

"For the purpose of constructing and maintaining a turnpike or plank road commencing at the most suitable point in the Walnut Hills, Madisonville and Plainville turnpike east of Walnut Hills and running thence eastwardly to the Cincinnati, Columbus & Wooster turnpike, near the residence of John F. Ferris."

And providing further that:

"The county of Hamilton shall have a right after twenty years to purchase said road in such a manner as prescribed by law."

The record discloses a conflict in the testimony as to just how wide this plank road, as it is called, was opened, witnesses for plaintiff testifying that it was opened to a width of at least 40 feet, and a witness on behalf of defendant testifying that it was opened at least 60 feet in width. The law at that time provided that turnpikes should be not less than 33 feet nor more than 60 feet in width. There is no question but that it was actually improved in front of the property of plaintiff to a width of at least 24 feet.

July 2, 1856, a plat of John Morten's 65 acre tract was prepared and placed on record in the county recorder's office on August 14, 1856, which divided said tract into six lots, one of which contained 15.97 acres, marked "reservation, homestead lot," and the other five lots numbered consecutively from 1 to 5 were marked with the respective names attached to the plat. The plat as recorded had on its margin the following:

"Plat of partition of the estate of John Morten situate in Section 26, Township 4 (now Spencer), 2nd Fractional Range, Miami Purchase, 4 miles north of Cincinnati on actual survey. (Whole tract containing 65.75 acres.)" R. C. PHILLIPS, *Surveyor*.

"Cincinnati, July 2d, 1856.

"We, the undersigned, the heirs of John Morten, agree that this plat in partition of the lands of said John Morten, as surveyed and set out by R. C. Phillips, Surveyor, is satisfactory to us and we do hereby adopt the same, and bind ourselves, our heirs and assigns to abide by it.

"In testimony witness our hand and seal.

| | |
|---|---|
| "ANDREW G. MORTEN | (Seal.) |
| "CHARLOTTE B. CRYER | (Seal.) |
| "MARY ANN MORTEN | (Seal.) |
| "THOMAS H. MORTEN | (Seal.) |
| "THOMAS CRYER, in trust, etc., for | |
| M. G. and T. E. Morten | (Seal.) |

"Scale 1 inch to 200 feet.

"R. C. PHILLIPS, *Surveyor*."

This plat delineates streets without giving the width thereof, but it is drawn to a scale, one inch to two hundred feet. Along the northern boundary of the Morten land the plat shows from the northwest corner to the angle at the north end of plaintiff's property, the road which is now Observatory avenue marked "plank road;" and east of that point the same road, now Observatory avenue, marked "county road." It also shows a stone in the center of this road 39.75 feet from the west line of lot numbered 2, and a road marked "plank road" extending south 38 degrees east 937 feet, to the south line of said Morten tract. The width of this road not being fixed in figures as above stated, scales slightly over 60 feet.

A deed was executed by John Morten and his wife, of general warranty, conveying Lot Number 2, as shown on this plat, to Mary Ann Morten, by the following description:

"All that certain lot or tract of land, situated in the county of Hamilton and state of Ohio, in section twenty-six (26) township four (4) and second (2d) fractional range in the Miami purchase, and known and designated as 'lot No. two (2) on Plat in Partition the lands of John Morten' recorded in Plat Book

No. 1, page 281, Hamilton county records, bounded and described as follows, to-wit:

"Beginning at a stone in the north boundary line of said section twenty-six (26) and eastwardly from the N. W. corner thereof one thousand and thirty 89/100 feet (1030.69) being the N. E. corner of lot No. one (1) this day deeded to Thomas Henry Morten, thence with said section line S. 89° 12′ E. thirty-nine 75/100 (39.75) feet to a stone in the section line and the angle of the plank road, thence along the center of the plank road S. 38° E. nine hundred and thirty-seven (937) feet to a stone, thence S. 38′ W. three hundred and twenty-nine 80/100 (329.80) feet to the south line of said Morten's land and to a stone therein, thence along the said south line N. 89° 12′ W. six hundred and twenty-nine 26/100 feet to a stone at the S. E. corner of lot No. one (1) N. 0° 38′ E. one thousand and seventy-two 80/100 feet to the stone at the beginning, containing ten and 46/100 acres (10.46) of land."

On the same day a deed of special warranty was executed to Mary A. Morten by Thomas H. Morten and the other so-called heirs of John Morten, for the same lot, No. 2, under the same description. These deeds were both placed of record on the same day the plat was recorded.

. Mary A. Morten, who became the wife of Samuel A. Leeds, thus became the owner of this tract of land known as Lot No. 2, and the plaintiff, her stepdaughter, holds her title under a deed from Mary A. Leeds and husband, which describes the east line as the center of Linwood road.

After the territory which included this property had been annexed to the city of Cincinnati, its platting commission on February 4, 1875, in pursuance of law, made a plat of this Section, on which Linwood pike is shown as a dedicated street to a width of 60 feet, on the same location as shown on the plat of John Morten's estate above referred to. In 1880 the interests of the turnpike company were sold under foreclosure proceedings and conveyed by the sheriff to Samuel M. Ferris, under a description which located the road, but did not fix its width. On February 18, 1897, Samuel M. Ferris conveyed to the city of Cincinnati the Linwood pike under a deed which fixed its center line by courses and distances, and conveyed a strip

of land 30 feet wide on each side of the center line, the part through the property under consideration coinciding and referring to the plat made by the platting commission.

In 1905 the city improved said Linwood pike to the width of 60 feet, and in so doing caused the fence and certain trees and shrubbery to be removed from between the lines of the road so fixed. The fence as it existed at the time the city commenced its improvement, according to plaintiff's testimony, stood on the same line that an old fence had existed for many years, and was on a curved or crooked line extending in its widest part about 29 feet into said highway as so improved, and running from that to a width of nothing at each end.

The petition below stated two causes of action: The first cause asked compensation for the strip of land included within plaintiff's fence and the west line of said Linwood road, and for certain trees and shrubbery thereon. And the second cause of action asked for damages by reason of the change of grade of Linwood road, which made a cut in front of plaintiff's property.

In the trial below, at the conclusion of the plaintiff's testimony defendant moved to arrest the evidence from the jury, and that judgment be given for the defendant separately in each cause of action, both of which motions were overruled.

After the defendant introduced its evidence and plaintiff introduced her evidence in rebuttal, the defendant again moved that the evidence on each of the two causes of action be arrested from the jury and judgment be entered for defendant. The court refused to arrest the evidence on the first cause of action, but granted the motion on the second cause of action, and made an order dismissing the second cause of action from the case, to which plaintiff excepted.

On submission, the jury rendered a verdict for $1,100 in favor of the plaintiff on the first cause of action, whereupon defendant moved for a judgment notwithstanding the verdict, and also filed a motion for new trial, and plaintiff made a motion to set aside the order dismissing the second cause of action and for a new trial of said second cause of action. All these mo-

tions were overruled by the court, and judgment was entered on the verdict for plaintiff on the first cause of action.

A bill of exceptions containing all the evidence in the case was taken, and a petition in error was filed by the defendant, seeking to set aside said judgment, and a cross-petition in error was filed by the plaintiff asking a reversal of the judgment entered against her on the second cause of action.

The question first to be determined is, the rights of the public in Linwood road, whether or not it is a dedicated street, and if so, to what width.

As was said by the Supreme Court in the case of *Village of Fulton* v. *Mehrenfeld*, 8 O. S., 440:

"Dedication of ground for public uses may be made in Ohio either by the statute or according to the rules of common law."

The record here fails to show a statutory dedication. The plat of partition of the John Morten estate was not signed by the owner of the fee, nor was it acknowledged. If it had been signed and acknowledged by the owner of the fee, it, in itself, followed by the public use of the plank road, would have effected a statutory dedication.

While John Morten did not himself sign this plat, it was signed by his children and "heirs," who became at the same time his grantees, and his deed to Mary A. Morten described the property conveyed by reference to that plat, and its description referred to this plank road in such a manner as to show the adoption of that plat by him. And the deed from Mary A. Morten Leeds and husband to the plaintiff below also refers to and uses the center of Linwood road as a part of its description.

No particular words or ceremonies, or form of conveyance is necessary to render the act of dedicating land to public uses effectual. Anything which fully demonstrates the intention of the donor, or the acceptance by the public, works that effect. *LeClercq* v. *Gallipolis*, 7 Ohio, pt. 1, 220.

It has been repeatedly held that where the owner of real property makes and records a plat showing streets, highways

or public squares, and sells land with reference to that plat
and the streets, highways or public squares thereon are used
by the public, that he thereby dedicates them to the public.
And this is true whether the plat is properly executed and
acknowledged or not.  *13 Cyc.*, 455, and cases cited; *Darber* v.
*Scott,* 3 C. C., 313; *Wright* v. *Oberlin,* 23 C. C., 509, 511; *Doren*
v. *Horton,* 1 Dis., 401, 404; *Brown* v. *Manning,* 6 Ohio, 298,
303; *Huber* v. *Gazlay,* 18 Ohio, 18.

While the record does not clearly show that there was in ex-
istence a public highway on this line prior to the construction
of the plank road or turnpike, it is clear that from a time earlier
than 1856, when this Morten plat was made, there was a traveled
highway known as the "plank road" upon that line.

Under the authorities we are of the opinion that the Morten
plat and deeds above referred to, taken in connection with the
use by the public of the highway shown as the plank road, known
now as Linwood road, operated as a dedication of the same to
public use, and this notwithstanding the fact that at the time
of making that plat the road on that line then in existence was
under the control of the turnpike company.

While a turnpike may be owned and operated by a private
corporation, it is still a public highway.  A turnpike road can
only be constructed and operated under authority of law, and
when used by the public it becomes a public highway.  The
purpose and object of a turnpike is merely to provide a public
highway of a better quality than would be furnished by an ordi-
nary county road, and it is maintained by tolls instead of by
public taxes.  It is not in any sense a private road or way; it
could not be closed by the stockholders or corporation against
the public use; it is constructed under or by virtue of public
authority for the use of every person who desires to pass over
it, on the payment of the toll established by law, and its use is
common to all who comply with the law.  The easement en-
joyed by the public in a turnpike road is vested in the public,
as much as that of a common highway.  If for any reason the
turnpike should be abandoned as such, it would still remain a
public highway.  *R. R.* v. *Commonwealth,* 104 Penn., 583; *State*

v. *Maine,* 27 Conn., 41; *People* v. *Davidson,* 79 Cal., 166; *Com'rs.* v. *St. Rd. Plank R'd Co.,* 1 N.P.(N.S.), 143 (aff'd by Supreme Ct.); *Chagrin Falls & Cleveland Plank R'd* v. *Cane,* 2 O. S., 419.

Some question is raised in the brief of the defendant in error as to the sanity of John Morten at the time of the making of this plat and deeds, but the only evidence on this subject shown in the record is on page 156, where his daughter made the statement, in answer to a question as to how her father felt about this road going through this farm: "Well, it worried his mind so that he was obliged to go to the insane asylum." This testimony is certainly not sufficient proof that the grantor in the deed under which she claimed title and under which plaintiff in error holds, was, at the time of its execution, *non compos* to such an extent that it would invalidate the deed or the plat which he adopted in the making of that deed; and plaintiff below as the grantee of her mother's deed which described the premises conveyed to her as bounded by the center line of Linwood road, was bound to take notice of the existence of that highway and is chargeable with knowledge of its location. *Seegar* v. *Harrison,* 25 O. S., 14.

Plaintiff below, however, claimed that the highway which existed along the eastern boundary of her property was limited to the portion actually used, and that she was the owner of the 23/100 acres described in the petition which lay between the line of her fence and the west line of Linwood road to a width of 60 feet as improved by the city.

It is well settled in Ohio that an abutting property owner can acquire no right in a public highway by encroachment or occupation however long continued, where such encroachment or occupation is of a temporary character such as fences, walls, shrubbery, etc., and is upon that part of a street not then required for public use. *Lane* v. *Kennedy,* 13 O. S., 42; *McClelland* v. *Miller,* 28 O. S., 488; *Ry.* v. *Comm'rs,* 31 O. S., 338; *Ry.* v. *Comm'rs,* 35 O. S., 1; *Heddleston* v. *Hendicks,* 52 O. S., 460; *Ry.* v. *Elyria,* 69 O. S., 414.

The deed under which plaintiff below held title fixed the center of this road as but one foot from her fence. It was conceded by her that the road was at least 40 feet wide. She therefore could make no claim that the entire 23/100 acres was her property from occupation, being simply enclosed by a fence for a dooryard of her residence. It is true the width of the road is not shown on the plat in figures, but as the plat was drawn to a scale it could be ascertained as accurately as though marked in figures, and the plat has thus fixed the width. *Zeller* v. *Littell*, 58 Atl., 377.

Where a plat thus fixes the width of a highway, and the public uses only so much of it as might be necessary for the public travel at that time, its use will be held an acceptance of the street to its entire width fixed by dedication. This law is well stated in 13 Cyc., 488, as follows:

"If a street is dedicated by the platting of land into blocks and lots intersected by streets and the sale of lots with reference to the plat, the width of the street is that fixed by the plat or map, and the failure to open and improve the street for its whole width does not operate as an abandonment of the part not opened and improved. So, if a highway of a definite width has been commenced by an actual and recorded location, by proceedings not strictly conformable to law, the public after twenty years user is entitled to a way of the width originally laid out, although the part traveled during that time may not have been so wide, and where a public street becomes such by dedication followed by an acceptance by use, the location of the street as delineated by the stakes which were set in the act of dedication according to which the street was opened and used, determines the lines of the dedication." *Lins* v. *Seefeld*, 126 Wis., 610, 614; *Ry.* v. *Ferris*, 93 Cal., 263, 264; *Commonwealth* v. *Shoemaker*, 14 Pa. Super. Ct., 194.

We therefore conclude that Linwood road was a dedicated highway within the lines to which the city made its improvement, and plaintiff below failed to sustain her first cause of action against the city, and the court below erred in not upon its motion withdrawing the case from the jury and entering a judgment for defendant.

As the record fails to show that any claim was filed for damages by reason of change of grade in the improvement of Linwood road, as required by Section 3823 of the General Code, the action of the court below was correct in withdrawing the second cause of action from the jury and entering judgment thereon for defendant.

The judgment below will therefore be reversed as to the first cause of action, and sustained as to the second cause of action, and final judgment will be entered for plaintiff in error.