CITY OF MILWAUKEE, Appellant, vs. MILWAUKEE ELECTRIC
RAILWAY & LIGHT COMPANY, Respondent.

*May 12—October 13, 1931.*

For the appellant there were briefs by *John M. Niven,* city attorney, and *Walter J. Mattison,* assistant city attorney, and oral argument by *Mr. Mattison.*

For the respondent there were briefs by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *James D. Shaw.*

The following opinion was filed June 12, 1931:

FRITZ, J.    There is no controversy between the city and the defendant, the present owner of the property and franchises of the Milwaukee Northern Railway Company, as to the right of the defendant to operate a street railway for the carrying of passengers, including "interurban cars," on the streets in question.    The case presents the narrower question of whether that franchise includes the right to carry merchandise, freight, or package goods, and particularly the right to do so in cars used exclusively for such carriage.

In 1905 the Milwaukee Northern Railway Company was organized to operate an electric railway to carry passengers "and all kinds of property" in and between Sheboygan and Milwaukee; and November 4, 1905, the supervisors of the town of Milwaukee granted a permit to that company to operate "interurban cars carrying passengers, merchandise, freight, and package goods" on and across certain town highways, up to the limits of the city of Milwaukee.    On March 22, 1906, the plaintiff enacted the ordinance upon which defendant's rights are based, and which, in sec. 1, authorized the Milwaukee Northern Railway Company to "operate a single or double track for street railways for the carrying of passengers" on the streets in question from the city limits to a proposed terminal of that company at Wells and Fifth streets, in the heart of the city.    Sec. 2 provided that that company shall operate "over the street railway local

and interurban cars and carriages by means of power produced by electricity, . . . provided, however, said railway company shall at all times operate a reasonably convenient local street railway service," etc. In sec. 4 the city reserved the right to grant the use of tracks and power to any other company "operating any interurban railway or suburban street railway whose business is of a like nature." Sec. 11 provided that if the city elected to purchase the property of the company, the latter would have the right to run over the line "cars coming from interurban lines." Sec. 13 provided that the franchise would be void unless the company constructed, connected, and operated twenty miles of railway north of the city limits within two years. Sec. 15 authorized the company to leave the main tracks within the city limits, to connect with a terminal station within the city, and to build connecting tracks from such terminal to its main track and other "electric roads."

There was no definition or explanation in that ordinance as to what the "interurban cars," "interurban railway," or "interurban lines," mentioned in the ordinance, were to be authorized to carry within the city limits, although it is manifest from contemporaneous events in which the company and the city participated that the subject matter of the proposed carriage, and the propriety of specifying such subject matter in municipal permits or ordinances, was in the minds of the parties. Thus, in the permit which the Milwaukee Northern Railway Company then obtained for that portion of its project in the town of Milwaukee, which extended up to the Milwaukee city limits, it defined the cars as "interurban cars carrying passengers, merchandise, freight, and package goods." On the other hand, it appears that the Milwaukee Northern Railway Company withdrew an application for a franchise over additional streets in the city of Milwaukee, to enable the city on February 26, 1906, to grant a franchise to the Chicago & Milwaukee Electric

Railway Company; that that franchise also provided that if the city elected to purchase the line, the Chicago & Milwaukee Electric Railway Company would have the right to run over such line its cars "coming from interurban lines;" but that in that franchise the subject matter authorized to be carried and the limitation thereon were specified by the express provision that the business of the grantee, "its successors and assigns, shall be limited to the transportation of passengers, mail, express, and baggage, and that no freight shall be carried by the said grantee . . . over the right of way hereby granted."

As that franchise of the Chicago & Milwaukee Electric Railway Company, with those provisions, was granted within four weeks of the granting of the Milwaukee Northern Railway Company franchise, and both franchises contained reciprocal provisions for the issuance and acceptance of transfers issued to passengers on either line, the officers of the Milwaukee Northern Railway Company and of the city were undoubtedly familiar with all provisions in both franchises, and aware of the express grant to the Chicago & Milwaukee Electric Railway Company of authority to carry mail, express, and baggage as well as passengers, and of the entire omission in the Milwaukee Northern Railway Company franchise to specify any subject of carriage excepting passengers. Is not that omission of considerable significance in construing that franchise? In a matter of such importance, and which was the subject of enactment in contemporaneous franchises in which the Milwaukee Northern Railway Company was interested, it is hardly conceivable that the omission was inadvertent.

A comparative study of the provisions in the permit issued by the town of Milwaukee and in the franchises granted by the city of Milwaukee to the Chicago & Milwaukee Electric Railway Company and the Milwaukee Northern Railway Company, respectively, rather indicates that "interurban"

service was intended to include the transportation of (1) passengers, merchandise, freight, and package goods in the town of Milwaukee; (2) and, within the city limits, passengers, mail, express, and baggage, but not freight on the Chicago & Milwaukee Electric Railway Company line; and (3) passengers only on the Milwaukee Northern Railway Company lines. At all events, there is no provision in the franchise of the Milwaukee Northern Railway Company of March 22, 1906, authorizing the operation on city streets of interurban cars used exclusively for carrying freight.

Likewise, it does not follow that the right to any such exclusive use of interurban cars was contemplated under the franchise of March 22, 1906, even if the word "interurban," as applied to a line of railway, had in 1906 the definite meaning which defendant now ascribes to it in its brief, when it says: "It clearly imported the meaning that the line was to operate from one urban community to another for the carriage of passengers and property." In that connection defendant refers to the opinions in *Milwaukee L., H. & T. Co. v. Milwaukee-Northern R. Co.* 132 Wis. 313, 112 N. W. 663, and *Beloit, D. L. & J. R. Co. v. Macloon,* 136 Wis. 218, 116 N. W. 897, as illustrating the manner in which this court, in discussing then existing statutes, referred to interurban railways as "carrying passengers and freight," "for the carriage of either passengers or freight," "for the carriage of through passengers or freight." Nothing was said then or in subsequent decisions, or in legislative enactments in this state, that warrants the conclusion that the word "interurban," when applied to a railway, necessarily or unequivocally means both freight and passenger service, or the operation of some cars exclusively for freight service. Consequently, on its face, the franchise, authorizing the Milwaukee Northern Railway Company over certain city streets "to operate a single or double track for street railways for the carrying of passengers" and to "operate over the street rail-

way local and interurban cars and carriages by means of power," without specifically authorizing the carrying of freight, does not unquestionably authorize that company to engage in the transportation of freight in street cars within the city limits. No franchise granting authority to engage in such transportation for any extended period was ever obtained by the Milwaukee Northern Railway Company.

However, defendant further contends that even if the franchise does not definitely authorize such transportation, but, instead, is ambiguous, its "meaning has been clarified and rendered certain by a long period of practical construction by the parties, which construction is entirely consistent with the language of the franchise." On the trial both parties introduced evidence bearing on the practical construction which had been given to the franchise. Briefly stated, that evidence establishes the following facts: Ever since the Milwaukee Northern Railway Company commenced operating, on October 27, 1907, its interurban passenger cars had a compartment for freight, and in such compartment carried freight of all kinds in less than carload lots, on the same cars on which it carried its passengers. It maintained a combination passenger and freight depot just outside of the city limits, with a sidetrack to the depot for unloading freight. However, it carried some of its freight in the compartments in the interurban passenger cars over the city streets to Fifth and Wells streets. In 1915 it desired to carry carloads of milk to its down-town terminal. After some controversy, abutting property owners, assembled in a public meeting, consented to permit the transportation of one car of milk daily to that terminal, but the common council took no action on the subject. Thereupon the Milwaukee Northern Railway Company invested $100,000 in tracks and a depot on its private property near Fifth and Wells streets, and thereafter transported that daily carload of milk, and also

other freight in the compartments of interurban passenger cars to that depot.

In 1928 there was some agitation in relation to the carrying of freight over streets within the city, and it appears that the company sought to acquire the right to use the private right of way of a steam railroad. Negotiations between the company and the city resulted in the adoption by the common council of Milwaukee, on February 13, 1928, of a resolution which, without prejudice to any party, granted permission to the company, for ninety days, to carry freight on its lines within the city limits the same as it had been doing. On April 30, 1928, the defendant acquired control of the property and rights of the Milwaukee Northern Railway Company, and since then has been operating its lines. On June 4, 1928, the common council by resolution granted to the Milwaukee Northern Railway Company and the defendant, as its successor, an extension of the permit to carry freight within the city limits until August 13, 1928. And on September 24, 1928, the common council by resolution granted authority to the defendant to transport merchandise and express in cars similar in appearance to passenger cars, on any part of its system which is within a radius of 3,000 feet from Wells and Sixth streets. That grant extends to a part of the down-town portion of the former Milwaukee Northern Railway Company lines, but leaves some two miles of track beyond that 3,000 feet radius and within the city limits as to which the operating rights are still wholly dependent on the franchise of March 22, 1906.

Since the defendant acquired control of the Milwaukee Northern Railway Company it has discontinued the use of the interurban passenger cars with a compartment for freight. It has scheduled twenty trips daily for interurban cars carrying passengers only, and for some of those trips has two or three car trains. It carries the freight in cars

used exclusively for that purpose, and for that service now operates six to eight cars each way daily, in trains of two to four cars.

Those facts present a strong case of practical construction (*State ex rel. Kenosha G. & E. Co. v. Kenosha E. R. Co.* 145 Wis. 337, 343, 129 N. W. 600), and establish decisively the true meaning or intention of interested parties in using the term "interurban cars" in the franchise of March 22, 1906. *State ex rel. Hayden v. Arnold,* 151 Wis. 19, 31, 138 N. W. 78; *State ex rel. State Asso. of Y. M. C. A. v. Richardson,* 197 Wis. 390, 393, 222 N. W. 222. They establish that ever since the operation of the first interurban car under the franchise, the parties interested have considered the transportation of freight in less than carload lots, in compartments in interurban passenger cars, rightly a part of the authorized interurban service, even within the city limits. In that respect and to that extent that practical construction by parties for some twenty-two years convincingly establishes that in using the term "interurban cars" in the franchise it was intended to permit the carriage of freight on interurban cars used primarily, but not exclusively, for passenger service. However, the evidence does not warrant any such conclusion as to the transportation of freight for hire in carload lots over city streets. It does not appear that the company ever attempted to do so until in 1915, when it proposed to transport a single car of milk daily. That service, if lawfully authorized, would have constituted an additional burden upon the abutting property, because of which the owners might have become entitled to compensation. *Wilbur L. Co. v. Milwaukee L., H. & T. Co.* 134 Wis. 352, 114 N. W. 813. But the company, instead of engaging in that service, by virtue of authority lawfully conferred by franchise, contented itself with mere informal acquiescence obtained at a meeting of abut-

ting property owners, to the transportation of the single carload of milk daily.

Under those circumstances, the mere transportation of that daily carload cannot be said to evidence the existence of the intention, when the ordinance was enacted, to include carload shipments of freight in the authorization to operate interurban cars. Likewise, the special temporary permits to carry freight which were granted, without prejudice, in April and June, 1928, and the defendant's use, since that year, of cars for hauling freight, which are used exclusively for that purpose, afford no basis for determining what type of interurban service the ordinance was intended to authorize.

Under the facts and circumstances of this case, we conclude that the ordinance of March 22, 1906, authorizes the operation, on the designated streets of the city of Milwaukee, of interurban cars which are used primarily, but not necessarily exclusively, for passenger service; that in connection with and as incidental to such passenger service, freight or express may be carried in interurban cars which are also available for passenger service; but that it does not authorize the operation of cars to be used exclusively for the transportation of freight. In accordance with those conclusions, plaintiff is entitled to judgment enjoining the defendant from operating interurban cars which are used exclusively for the transportation of freight on such of plaintiff's streets, designated in the ordinance of March 22, 1906, as are not within the radius of 3,000 feet from Sixth and Wells streets.

*By the Court.*—Judgment reversed, with directions to enter judgment in accordance with this opinion.

The following opinion was filed October 13, 1931:

PER CURIAM. In so far as the defendant's brief, on its motion for a rehearing, is a reargument of the issues dis-

posed of in the opinion filed herein, there is no occasion for a rehearing. It may be true that, in view of modern conditions, present-day demands for more expeditious passenger service render impractical the handling and transportation of freight on passenger cars. The resulting operating problem may be solvable only by confining the transportation of freight to cars used exclusively for that purpose. If that is the only solution, then, in so far as the defendant has failed to acquire the right to operate such cars on city streets under the franchise of March 22, 1906, it may be necessary for it to obtain an additional grant from the city, and also to acquire the right to subject abutting property to such additional burden as may result from the operation of cars used solely for the transportation of freight for hire. Manifestly, courts cannot rightly by interpretation either enlarge rights conferred by municipal ordinances, or subject privately owned property to additional burdens without the consent of, or compensation to, the owner, even though changes in the conditions and means of transportation may warrant an additional grant.

The right of a street railway company to carry materials for its own purposes in maintaining and operating its railway system, which was recognized in *Waszkiewicz v. Milwaukee E. R. & L. Co.* 147 Wis. 422, 133 N. W. 596, was not challenged in the instant case; and the decision herein is merely in relation to the defendant's activity as a common carrier for hire.

The motion for a rehearing is denied, with $25 costs.